WILLIAM SKYRME, RESPONDENT, *v.* THE OCCIDENTAL MILL AND MINING COMPANY *et als.,* APPELLANTS.

COMPLAINT ON MECHANICS' LIENS—OMISSION OF ALLEGATION OF TIME OF FILING.
Where a complaint to foreclose mechanics' liens failed to show that they were filed within six months before the commencement of the action : *Held,* that the omission was one which should be taken advantage of by demurrer, and that after issue joined and decision rendered on the merits the pleading would be upheld by every legal intendment.

Skyrme *v.* Occidental Mill and Mining Co.

SUFFICIENCY OF COMPLAINT TO FORECLOSE MECHANICS' LIENS. The sufficiency of a complaint for foreclosure of mechanics' liens is to be determined by the statute; and if there is a substantial compliance with the requirements of the statute it is sufficient.

MECHANICS' LIENS ASSIGNABLE. Mechanics' liens are assignable and may be enforced by an action in the name of the assignee.

ASSIGNMENT OF MECHANICS' LIENS FOR PURPOSE OF SUIT. Where various holders of mechanics' liens assigned to one upon an understanding that he was to bring suit in his own name, each assignor to bear his proportion of the expense incurred and to share *pro rata* in the amount realized: *Held,* that a suit by such assignee on all the liens might be maintained.

WORDS USED IN ASSIGNMENT OF MECHANIC'S LIEN. Where an assignment was indorsed on a mechanic's lien as follows: ' "For value and in consideration of the sum of one dollar in hand paid by Wm. Skyrme, the receipt whereof is hereby acknowledged, I do sell, assign, transfer and set over to said Wm. Skyrme the within lien and all my rights thereunder." *Held,* that the language used was broad enough to include the debt secured by the lien.

MECHANIC'S LIEN, WHAT. The paper called a mechanic's lien *is simply evidence* that the acts required by statute have been performed and that therefore the lien created by the statute has attached; and an assignment of such paper with all rights thereunder is an assignment of the debt as well as of the lien.

No PARTICULAR WORDS NECESSARY TO ASSIGNMENT. No particular words are necessary to constitute an assignment of a debt; it is sufficient if the intent of the parties to effect an assignment be clearly established.

ASSIGNMENT AFTER SUIT BROUGHT BY ASSIGNEE. Where mechanics' liens had been assigned and suit brought on them in the name of the assignee, and afterwards new and more formal assignments were made: *Held,* that the latter were irrelevant as evidence in the case, but that their admission was immaterial error, not affecting the decree.

EFFECT OF NEW LAW ON OLD MECHANICS' LIENS. Where suit was brought to foreclose mechanics' liens which attached under the act of 1861 (Stats. 1861, 35) after the repeal of that law by the act of 1871 (Stats. 1871, 123); and it was claimed that the lien, being nothing but a remedy, fell with the repeal of the law : *Held,* that neither the lien was lost nor the right to enforce it.

CONSTRUCTION OF MECHANICS' LIEN LAWS. The new mechanics' lien law of 1871 (Stats. 1871, 123), which took effect simultaneously with the repeal of all former acts on the subject, was intended as a substitute therefor ; but instead of entirely abrogating and annulling such prior laws it had the effect of continuing them in force so far as existing rights thereunder were concerned. .

No JOINT MECHANICS' LIENS WITHOUT JOINT INTEREST. There is no provision in the mechanics' lien law for filing joint liens when no community of interest exists ; and, if an attempt has been made to file a joint lien, it does not prevent the several lien claimants from filing valid individual liens.

MECHANIC'S LIEN FOR WORK DONE BY MINER UNDER VARIOUS CONTRACTS. Where miners filed mechanics' liens for work done in the development of a mine, and it appeared that they worked a portion of the time under special contracts and a portion of the time by the day, but always under the direction of the foreman of the mine : *Held,* that the work was to be considered as one continuous

Skyrme v. Occidental Mill and Mining Co.

employment and not as distinct and independent jobs or contracts, and that each miner might file one lien for all his labor within the proper time after stopping work.

REQUISITES OF NOTICE OF MECHANIC'S LIEN. ·Where the notice of a mechanic's lien recited that it was to secure the performance of a contract to pay the money specified in a certain note, given in settlement according to agreement for labor performed as a miner in extracting ore and working in a certain mine for a certain time: *Held*, that though it would have been better to state clearly the character of work and by whom and for whom done, yet it was not so defective as to prevent the enforcement of the lien.

EFFECT OF·TAKING AND ASSIGNING NOTE UPON MECHANIC'S LIEN. Where a person, who had done work as a miner in a mine, upon settlement and adjustment of accounts with the owner took his note as evidence of the amount due, and afterwards having filed a mechanic's lien for the amount assigned his note and lien to another person, who brought suit: *Held*, that no rights of the miner or his assignee were relinquished or lost by the acceptance or transfer of the note.

MECHANICS' LIEN LAW TO BE LIBERALLY CONSTRUED. The mechanics' lien law is to be liberally construed so as to give lien claimants the benefits intended by the legislature.

APPEAL from the District Court of the First Judicial District, Storey County.

This was an action to foreclose mechanics' liens to the amount of $10,167 in coin against the Occidental Mill and Mining Company, a corporation doing business at Virginia City. William Sharon, E. H. Dyer, and Mark Strouse were made defendants as having or claiming interests which were alleged to be subsequent to those of plaintiff.

The complaint set out the rights of plaintiff, as the holder of a mechanic's lien for work performed by himself and as assignee of various liens of the same general character for work performed by his assignors, at the company's mine in Storey County between May 1, 1870, and October 23, 1870. There was no demurrer, but a very full answer. The testimony was taken before a referee; and upon the coming in of his report the various points were argued before the court. The result of the trial was a decree in favor of plaintiff for $8243 78 and costs in coin, and for a sale of the company's mine and claim to satisfy it.

Defendants moved for a new trial, which was denied, and they then appealed from the order.

"Exhibits from 40 to 46 inclusive," referred to in the opinion, consisted of formal assignments, made out after the commencement of the suit, in reference to seven of the liens sued on. Other facts are fully stated in the opinion.

*R. S. Mesick*, for Appellants.

I. The want of any averment of the date when the liens were filed or of the fact that they were filed within six months prior to the filing of the complaint renders the complaint destitute of any statement of facts showing the existence of a lien.

II. The liens were not assignable so as to be capable of enforcement in the name of the plaintiff as assignee. *Caldwell* v. *Lawrence*, 10 Wis. 331; *Pearson* v. *Tinker*, 36 Maine, 384; *Bicknell* v. *McKey*, 34 Maine, 273. Such a lien, like a vendor's lien, is a mere personal privilege and not assignable. *Brown* v. *Grisby*, 21 Cal. 172; *Lewis* v. *Covillaud*, 21 Cal. 178; *Williams* v. *Young*, 21 Cal. 227.

III. The mere assignment of the lien could not pass the original claim or demand. 30 Cal. 688. In any legal view of the case the construction of language written upon a paper denominated a lien, purporting to assign "the within lien and all rights thereunder," must be the same as if written upon a mortgage purporting to assign the within mortgage and all the rights thereunder. The one would be an assignment of simply the mortgage lien or interest of the assignor in the mortgaged property; and upon like principles, the other would be only an assignment of the mechanic's or laborer's lien or interest of the assignor in the property subject to the lien; and both must be equally void.

IV. The lien laws, by which the liens claimed in this suit including that of the plaintiff existed, were repealed by the law of March 4, 1871; and the liens fell with the law. Such liens are nothing but a remedy created by the legislature and liable by legislative enactment to be changed or abolished at any time before suit, or during the pendency of suit for the enforcement of the remedy. *Bangor* v. *Goding*, 35

Maine, 73; 54 Maine, 345; 41 Mo. 204; *Stocking* v. *Hunt*, 3
Denio, 274; *Brennan* v. *Swasey*, 16 Cal. 140; 21 Pick. 169;
2 Wallace, 463. It seems to us that the law of 1871 is not
a mere substitute for the previous lien laws; and if it is not,
those prior liens are gone. The remedy is purely statutory
and is extraordinary. By its being taken away the right is
not destroyed or seriously affected. There still remains to
the claimant all the ordinary remedies of the law against the
debtor.

V. No suit was brought until more than six months after
the liens were originally filed, and when by the provisions of
the statute they had ceased to bind the property. A party
could file but one lien upon the same claim for labor or
materials. The lien law once availed of became *functus
officio* as to the same demand. Hence the liens afterwards
filed and on which this suit was based were of no effect.
The joint liens were a sufficient compliance with the statute.
There is no reason outside or inside of the statute why liens
should not be filed together, any more than why they could
not be enforced when set up together by the holders in one
answer in a suit brought under the lien law and notice pub-
lished. The court should advance the remedy to every rea-
sonable extent, there being in the law no prohibition of such
a course.

VI. Exhibits from 40 to 46 inclusive can make no differ-
ence with the plaintiff's case as it stood at the time the com-
plaint was filed. Being subsequent thereto they were irrele-
vant and incompetent for any purpose.

VII. For distinct jobs of work or separate periods of
employment appearing to have no connection, the lien must
have been filed within sixty days of the time of the comple-
tion of each; and for work done in such jobs and periods com-
pleted more than sixty days prior to such filing the lien was
lost; and the filed claims and accounts as well as the com-
plaint must show facts sufficient to make the work continuous;
otherwise no lien could attach for work done prior to the sixty
days. *Livermore* v. *Wright*, 33 Mo. 31; *Wade* v. *Reitz*, 18
Ind. 307; *Spencer* v. *Barrett*, 35 N. Y. 94; *Fowler* v. *Bailey*,

14 Wis. 130; *Wilson* v. *Forder*, 30 Pa. 129; 8 Allen, 573, 593; 11 Allen, 154; 13 Gray, 311; 6 Gray, 531.

VIII. The exhibit in reference to the Tonkin lien does not on its face entitle the party filing it to any lien. The lien is not claimed for work or labor performed. There is no direct statement that there was any work or labor done, or if done, for whom; nor that the party claiming the lien performed any work or labor whatever. Again, the promissory note mentioned was received by Tonkin in full payment, according to the evidence; but if received only as a conditional extinguishment of the debt for work, it became upon its sale and transfer to plaintiff an absolute extinguishment of the debt and waiver of the lien. *Scott* v. *Ward*, 4 Green (Iowa) 112; Story on Prom. Notes, § 405; 35 Maine, 126; 40 Mo. 257. In the hands of the assignee it became our absolute and unconditional payment and extinguishment of the original debt to Tonkin; and this extinguishment and payment is totally inconsistent with continuation of the lien, which depended entirely upon the continued existence of the original debt.

*W. E. F. Deal* and *J. A. Stephens*, for Respondent.

I. The complaint fully complies with the requirements of the statute. Stats. 1861, 37, Sec. 7; Stats. 1871, 123, Sec. 9; *Brennan* v. *Swasey*, 16 Cal. 142. The statute contemplates a special proceeding although a suit is commenced by the filing of a complaint and issuance of summons. No judgment can be taken by default, but on the day named in the notice the plaintiff and all other claimants are required to appear and make full proof of their liens. *McNeil* v. *Borland*, 23 Cal. 149.

II. Plaintiff should have had an opportunity to amend his complaint if it was deficient in the particulars claimed. The court will support the complaint by every legal intendment if there be nothing material in the record to prevent it. *Meadow Valley M. Co.* v. *Dodds*, 6 Nev. 264; *McManus* v. *Ophir Co.*, 4 Nev. 18; *Regan* v. *O'Reilly*, 32 Cal. 11; *Peter* v

*Foss,* 20 Cal. 586; *James* v. *Goodenough,* 7 Nev. 327; *Hawthorne* v. *Smith,* 3 Nev. 193; *Howard* v. *Richards,* 2 Nev. 133. The evidence shows that the suit was commenced in time, and there is no specification in the statement showing that the complaint was objected to on the ground that it stated no cause of action. In such case the court will not notice the objection made here for the first time. See *Clarke* v. *Lyon County, ante,* 181.

III.    The legislature upon adopting the statute from California must be presumed to have adopted the construction given it by the supreme court of California. *Ash* v. *Parkinson,* 5 Nev. 24. That court prior to the passage of our law decided that a mechanic's lien was in the nature of a mortgage and could be assigned by a sale and transfer of the debt in writing. *Brock* v. *Bruce,* 5 Cal. 280; *Ritter* v. *Stevenson,* 7 Cal. 389; *Tuttle* v. *Howe,* 14 Minn. 145; *Taege* v. *Bosseaus,* 19 Grattan, 99; *Hurt* v. *Wilson,* 38 Cal. 264; *Hoyt* v. *Thompson,* 1 Selden, 347.

IV.    The case cited from 10 Wis. 331 by appellant decides that under the statute of Wisconsin mechanics' liens are not assignable. But an examination of the authorities cited in support of the decision by the learned judge, who wrote the opinion, does not warrant his conclusions. He has taken an expression, used by the judge in an English case cited in reference to a totally different matter, in support of the proposition that a personal right can not be transferred. See also *Daubigny* v. *Duval,* 5 Durnford & East, 603; 7 East, 5; 4 John. 102.

V.    The liens were all assigned by the written assignment indorsed on the back of each of the notices. These notices contained the accounts due; and the language used shows that it was the intention of the assignors to transfer not only the lien but the debt secured by it. The court should give the instrument a construction that will carry out that intention. *Murdock* v. *Brooks,* 38 Cal. 605.

VI.    The repeal of the statutes of 1861 and 1867 by the statute of 1871 does not deprive plaintiff of his remedy. Acts modifying previous remedies should be so construed as

not to affect rights of action, which have attached and become vested under the original law and existing at the time of the repealing statute. Sedg. on Stat. and Const. Law, 134; *Bedford* v. *Shelling*, 4 Serg. and Rawle, 401; *Duffered* v. *Smith*, 3 Serg. and Rawle, 590; *Hitchcock* v. *Way*, 4 Ad. and El. 943; 3 Ad. and El. 884; 4 Denio, 374; 2 Comstock, 182; 7 John. 503; 4 Barb. 75. The act of 1871 is a substitute for all the previous acts and was not intended to abrogate or annul them. *Steamship Co.* v. *Jolliffe*, 2 Wallace, 450; 1 Oregon, 119. The same construction has been given the statute of 1871 by the U. S. District Court of Nevada in *Sabin* v. *Connor*.

VII. The joint liens first filed by plaintiff's assignors were null and void for want of a substantial compliance with the statute. There is nothing in the statutes to warrant the filing of a joint lien unless there is a joint interest. They require the filing of a separate account and description by every person claiming the benefits of the act. Each of plaintiff's assignors made a separate contract with defendant; each contract was made at a different time from the others.

VIII. The work done by plaintiff's assignors was continuous, and they by filing their accounts and descriptions acquired a lien on defendant's mine for the whole work. 62 Pa. St. 9. A review of the testimony will show that the work was continuous; that the assignors, who did contract work, did not stop working; that is, that there was no new contract or employment.

IX. The taking of a promissory note for the amount due Tonkin did not deprive him of the benefits of the lien law. 4 Greene (Iowa), 112; 40 Mo. 261; 24 Ill. 110; 6 Bush (Ky.) 508; 17 Cal. 129. Nor did the transfer of the note to plaintiff extinguish the lien. The very purpose of the assignment was that the lien should be preserved. The note was delivered up at the trial to be cancelled. 40 Mo. 261; 2 Story, 470.

Skyrme v. Occidental Mill and Mining Co.

By the Court, HAWLEY, J.:

This is an action to foreclose thirty nine mechanics' liens, thirty-eight of which were assigned to plaintiff to enable him to commence this suit. The liens were claimed by plaintiff and his assignors, as miners, under the act of 1867. (Stats. 1867, 48, Sec. 1.) The appeal is from an order of the court refusing appellants a new trial.

The complaint regularly sets- forth the fact, in separate counts, that each assignor performed certain work and labor on the mine owned by the Occidental Mill and Mining Company, a corporation, defendant in this suit, between the first day of May, 1870, and the twenty-third day of October, 1870; that within sixty days after the completion of the work each assignor filed in the office of the county clerk of Storey County his account and demand properly verified, together with a correct description of the property to be charged with his lien; also his notice of intention to claim a lien upon the property therein described as required by Sec. 2 of the act of 1861, (Stats. 1861, 35) and closed with an averment that each assignor, ''by reason of the work and labor so done as aforesaid and by complying with the provisions of the said acts of the legislature of the State of Nevada, acquired a valid lien upon the said  *  *  mining claim  *  *  which lien remains wholly unsatisfied.''

There is no averment in the complaint as to the time when the liens were filed, nor does it appear therefrom that the liens which were assigned to plaintiff were filed within six months prior to the filing of the complaint. For this omission appellants claim that the complaint is entirely destitute of any facts showing the existence of a lien at the time of the commencement of this action. Appellants did not interpose any demurrer to plaintiff's complaint; but appeared and filed an answer, denying (with other denials) that either of the assignors ''ever filed or there was recorded in the office of the county clerk of Storey County any just or true account of the demand due him from the said company

defendant, for the work and labor mentioned in said complaint, or ever complied with the provisions of the acts of the legislature or any of them mentioned in said complaint, or ever acquired any lien upon the property or premises or any part thereof mentioned in said complaint, or ever sold, assigned, transferred or set over to the plaintiff any lien upon the said property * * * or that the plaintiff ever was the owner or holder of any lien thereon" derived from the assignors or either of them.

If we were to apply the strict rules of pleading to this complaint as in other civil actions, it might be defective in not stating the date when the liens were filed so as to show upon its face that the suit was commenced within six months thereafter. But we are of opinion that this omission is one which should have been taken advantage of by demurrer. After issue has been joined and a decision rendered upon the merits, it is the duty of appellate courts to support the pleading by every legal intendment if there be nothing material in the record to prevent it. Stats. 1869, 206, Sec. 71; *McManus* v. *Ophir Silver M. Co.*, 4 Nev. 18; *Meadow Valley Mining Co.* v. *Dodds*, 6 Nev. 264; 1 Van Santvoord's Plead. 834.

We are also of the opinion that the sufficiency of this complaint is to be determined by the statute. The statute creating the right whereby liens are acquired also provides the manner in which they may be enforced. Section 7 of the act of 1861 provides that "said liens may be enforced by suit in any court of competent jurisdiction on setting forth in the complaint the particulars of such demand, with a description of the premises sought to be charged with said lien." Stats. 1861, 37. The same language is contained in Sec. 9 of the act of March 4, 1871. Stats. 1871, 126. While the statute provides for a formal suit, it evidently contemplates a special proceeding in regard to the enforcement of mechanics' liens. It requires the plaintiff at the time of commencing his action to cause a notice to be published notifying lien-holders to appear in court on a certain day and exhibit proof of their liens, at

which time the court is required to proceed in a summary way to determine said liens and all liens not then presented are deemed to be waived in favor of those that are exhibited. No default can be taken so as to avoid the necessity of proving the liens. Considering the averments in the complaint with special reference to the act of the legislature, we are of opinion that there is a substantial compliance with the requirements of the statute.

Appellants claim that the liens are not assignable. The decisions upon this question differ with the construction of statutes and the different views entertained by judges in the several states. The position contended for by appellants is fully sustained in *Caldwell* v. *Lawrence*, 10 Wis. 331, and *Pearson* v. *Tinker*, 36 Maine, 387. The conclusion arrived at in both of these cases was that a mechanic's lien being the creature of the statute simply conferred a personal right which could not be transferred, and hence that such liens could only " be enforced in the name of the party to whom it accrued. "

In *Tuttle* v. *Howe*, 14 Minn. 150, it was held that the lien of a mechanic or material man might be assigned and that the assignee, in his own name, might maintain an action to enforce the same. Berry, J., in delivering the opinion of the court, said: "The lien law is designed for the protection of the material man, the mechanic and other persons performing labor upon buildings. As an assignment is not prohibited, and there is nothing in the nature of a lien which would render its transfer improper or injurious, and as the lien is wholly a creature of statute, the statute should be so construed (if it fairly may be) as to make the protection which it designs to afford as valuable and effectual as possible. And upon these grounds we think the assignability of mechanics' liens ought to be sustained if fair construction will permit it. "

We do not think the authorities cited in support of *Caldwell* v. *Lawrence* sustain the decision in that case. It is true, that in *Daubigny* v. *Duval*, (5 Term R. 603) the court said: "A lien is a personal right and cannot be transferred

to another." But the court was considering an entirely different character of liens than those provided for in our statute to secure mechanics and other laborers. The only principle decided in *Daubigny* v. *Duval* is that a factor has no right to pledge the goods of his principal. But this rule is subject to exceptions as shown by *Urquhart* v. *McIver*, 4 Johns. 102; *McCombie* v. *Davies*, 7 East. 5, cited in *Caldwell* v. *Lawrence*.

In *McCombie* v. *Davies*, Lord Ellenborough, C. J., said "that nothing could be clearer than that liens were personal, and could not be transferred to third persons by any *tortious* pledge of the principal's goods    *    *    *. His lordship then, after consulting with the other judges, declared that the rest of the court coincided with him in opinion that no lien was transferred by the pledge of the broker in this case, and added that he would have it fully understood that his observations were applied to a *tortious* transfer of the goods of the principal by the broker undertaking to *pledge* them *as his own;* and not to the case of one who intending to give a security to another to the extent of his lien, delivers over the actual possession of goods on which he has the lien to that other, with notice of his lien, and appoints that other as his servant to keep possession of the goods for him; in which case he might preserve the lien."

The statute of Maine in regard to enforcing mechanics' liens is radically different from the statute of this State. In the Wisconsin statute there is a provision that the lien claimant may proceed to recover his lien by a "personal action against the debtor." The statute of Minnesota also differs from the statute of this State in several particulars. The law in regard to mechanics' liens is a constant subject of legislative action; and the decisions of courts in the various states in regard thereto should have but little weight except when applied to the special statute to which they refer. The statute, under which the liens in the present action were filed, is entirely silent upon the question of the assignability of said liens; and in our opinion no substantial reason exists why, under the law and upon the facts shown

by the evidence in this case, such liens should not be assignable so as to give a right of action in the assignee.

The liens were assigned to plaintiff to enable him to bring the suit in his own name for the benefit of each lien-holder. Each assignor was to bear his proportion of the expenses incurred in the prosecution of the suit, and each to share *pro rata* in the amount eventually realized. The plaintiff, as the agent of the several lien-holders, might have proved up their liens without the assignment. But an assignment having been made, we think the assignee has the same right to enforce these liens. By executing the assignment it is evident that it was the intention of each lien claimant to preserve and enforce his lien. The plaintiff need not have brought the suit to foreclose any but his own lien and then by pursuing the provisions of the statute would have had the right to exhibit proofs as to the others. Stats. 1861, 37, Sec. 7; *Mars* v. *McKay*, 14 Cal. 128. But by bringing suit upon all the liens (doing more than was necessary) he did not, in our judgment, lose the right to have the assigned liens enforced. *Elliott* v. *Ivers*, 6 Nev. 290.

In California it is held that the statute creates a sort of mortgage or security, which follows the original debt or obligation. *Brock* v. *Bruce*, 5 Cal. 280; *Ritter* v. *Stevenson*, 7 Cal. 389. In the case of a mortgage it is held that the debt is the principal thing, the mortgage being but an incident; that independent of the debt the mortgage has no assignable quality. Upon this theory appellants contend that if the liens were assignable they could not be transferred without an assignment of the debt which the liens secured and claim that no such assignment has been made. The assignment is endorsed on each lien as follows: "For and in consideration of the sum of one dollar in hand paid by Wm. Skyrme, the receipt whereof is hereby acknowledged, I do sell, assign, transfer and set over to said Wm. Skyrme the within lien and all my rights thereunder." Without conceding the doctrine that a mechanic's lien is to be treated in every respect like a mortgage, we consider that the language used in the assignment is broad enough to include

the debt.   The true principle of sound ethics is to give this
language the sense in which the person making the assign-
ment, as well as the person accepting it, intended it to have.
When the assignors transferred their liens and all their
rights thereunder, they meant the right to foreclose the
lien and enforce the debt "in any court of competent juris-
diction."   The law provides that the mechanic, miner and
material man shall have a lien for his work and labor done
or materials furnished by complying with the statute.   In
this respect a mechanic's lien is different from a mortgage
executed by the consent of the parties, and also different
from a vendor's lien which arises from principles of equity
independent of the statute.   In the case of a mechanic's
lien the evidence of the debt, that is the account of the
lien claimant verified by his oath, is a part of the instru-
ment.   The paper we call a lien is simply evidence that the
acts required by statute have been performed, and therefore
that the lien created by the statute has attached.   Is not
the assignment of this paper, by whatever name it may be
called, *with all rights thereunder* as much an assignment of
the debt as it is of the lien?

No particular words are necessary to constitute an assign-
ment of a debt.   If the intent of the parties to effect an as-
signment be clearly established, that is sufficient.   If the word
*account* had been used instead of *lien* the objection of counsel
would probably not have been made.   To hold that these
liens were not properly assigned would be to allow the merest
technicality to triumph over justice.   The assignment of the
debt or account and the lien would undoubtedly be held
good as between the parties to the assignment, and we do
not think the defendants are in a position to complain be-
cause the parties did not use apt words to express their
meaning.   In arriving at the intention of the parties we
have been governed solely by the words of the assignment
and the acts of the parties at the time the transfer was made,
and have disregarded the several exhibits from 40 to 46 in-
clusive.   The plaintiff must stand or fall upon the merits of
the assignments as they existed when suit was brought.

The offer of these exhibits in court was an evidence of weakness on the part of plaintiff, which it was unnecessary to exhibit; and their admission in evidence was an immaterial error which in no wise affects the decree.

It is contended by appellants' counsel that the law under which the liens were claimed having been repealed before the commencement of this·suit-the right to enforce the liens was lost. In other words, that the liens, being nothing but a remedy created by the legislature, were liable at any time to be abolished, and hence that the liens fell with the repeal of the laws. Without considering the question whether such liens could be destroyed by legislative action, we are clearly of the opinion that the act of March 4, 1871, was not intended by the legislature to have any such effect. The act re-enacts many of the provisions of the law of 1861 and of the several acts amendatory thereto. Its general provisions with reference to filing and enforcing the liens is substantially the same. The law was evidently passed for the express purpose of embracing within its provisions all laws theretofore existing upon the subject of mechanics' liens. The act of 1871 took effect simultaneously with the repeal of all former acts and was doubtless intended to be substituted in the place of all laws existing upon the same subject prior to the time of its passage, so that instead of abrogating and annulling prior laws it had the effect to continue them in force in so far as existing rights thereunder were concerned.

Judge Hillyer, in the district court of the United States for the State of Nevada, has given to this law of 1871 the same construction. In *Sabin, Assignee,* v. *Conner, in Bankruptcy,* the learned judge says: "It is plain that the legislature never intended to destroy rights acquired under the old laws, but simply to consolidate all the laws upon the subject of mechanics' liens and to extend it to some objects not before included." The same principle has been decided in *Steamer Gazelle* v. *Wells Lake,* 1 Oregon, 119; *Wright* v. *Oakley* 5 Met. 406; *Steamship Co.* v. *Joliffe,* 2 Wallace, 458. The

16

remarks of C. J. Shaw upon the repeal of the statutes in
Massachusetts are applicable to the present case.   He said:
"In construing the revised statutes and the connected acts
of amendment and repeal, it is necessary to observe great
caution to avoid giving an effect to these acts, which was
never contemplated by the legislature.   In terms, the whole
body of the statute law was repealed; but these repeals went
into operation simultaneously with the revised statutes,
which were substituted for them and were intended to re-
place them, with such modifications as were intended to be
made by that revision.   There was no moment in which the
repealing act stood in force without being replaced by the
corresponding provisions of the revised statutes.   In prac-
tical operation and effect, therefore, they are rather to be
considered as a continuance and modification of old laws
than as an abrogation of those old and the re-enactment of
new ones.   In order to construe them correctly we must
take the whole of the revised statutes, together with the act
of amendment and the repealing act, and consider them in
reference to the known purposes which the legislature had
in view in making the revision."

The next objection of appellants is made upon the follow-
ing state of facts, viz:   On the 26th day of October, 1870,
twenty-nine of the lien claimants (and ten of them on the
29th of October) filed a joint lien for their work and labor
done and performed upon the mine owned by the Occidental
M. and M. Co.   Afterwards, on the twenty-sixth and thir-
tieth of November, 1870, the individual liens, to foreclose
which this suit was brought, were filed by each of said lien
claimants.   Upon this state of facts appellants claim that
the lien claimants could file but one valid lien and that the
joint lien having been filed more than six months prior to
the commencement of this action and no credit having been
given, the lien was lost.   The testimony shows that in many
instances each claimant made a contract for himself; some
commencing at one date and some at another; some work-
ing for $3 50 per day, others at $4.   In some instances con-
tracts were made with several of the claimants, but in all

these cases the settlements were made separately with each contractor, and occasionally some of the contractors received more than the others. There is no provision in our statute for filing joint liens where no community of interest exists, and we are therefore of opinion that the several lien claimants had the right to file their individual liens, treating the joint liens as if none such existed. *Young* v. *Chambers*, 15 Penn. State R. 267.

Appellants next contend that the individual liens are taken to secure distinct jobs of work and include separate periods of employment, and therefore that several of the liens are invalid because not filed within sixty days after the completion of each job or contract. A brief review of the testimony will show the character of the work. S. Schlewick, the foreman of the mine, after testifying to the amount and character of work performed by each lien claimant, says: "All the work which I have mentioned as having been done by the various parties as miners was done upon the ledge described in the complaint. * * * The contract work * * * was none of it done by the day. The only way that I get at the amount coming to the different men on contract is dividing the amount by the number of men in the contract. The winze contract I made with all the parties to the contract. I cannot distinguish between the contracts which I have mentioned, in which I bargained with all the parties to the contract, and those in which I bargained with only a portion *for all*." C. Mayer, the bookkeeper, testified as follows: "The foreman, Simon Schlewick, furnished me the amount of contract, how much per foot, the number of feet finished, and I worked it out and divided it amongst the men in the contract, whose names he gave me. I was informed by Simon Schlewick that these amounts were due for work done on the Occidental mine." On cross-examination by defendants this witness said: "I don't know whether the $187 50 due Ed. Bowden was due on one or more contracts. * * * I cannot say from the books or otherwise that the amount due Bowden was for one or two jobs. The books do not show, neither do I know, when the work was

finished on any of the contracts I have mentioned." On re-direct examination by plaintiff this witness said : "Each man's account for day labor and contract was kept in one account, but the entries in the journal show what was for day's labor and what was for contract work."

The details of the testimony show that a half dozen con-tracts were taken by a dozen or more of the lien claimants, some taking two or more contracts, others but one. These contracts were completed, respectively, May 8, June 11, July 22, August 15, and during the month of October, A.D. 1870. Two were unfinished in October, when the owner of the mine suspended and discharged all the men. The miners at work by contract, when their contracts were completed, either took a new contract or commenced work by the day in the same mine. The liens include the amount due to each claimant for his entire labor under the contracts and by the day.

The manner in which the work was conducted in the Oc-cidental mine is quite common in many of the mines in this State. In the prosecution of the work it is necessary to run tunnels and cross cuts, and sink winzes; and while as a general rule the laborers are employed by the day, it is often the case that some of them will take a contract to do this kind of work at a stipulated price per foot, and within a few days after their contracts are completed either go to work by the day or take other contracts in the same mine. It would be a harsh and unreasonable rule of construction in these cases to hold that the statute required separate liens to be filed for each contract to enable the laborer to secure his wages. The injustice of such a rule would be greater to the mine owner than the laborer. It would destroy the credit, necessary at times to have in order to continue operations on the mine, or add unnecessary costs and litigation by fil-ing and foreclosing a multiplicity of liens.

In the case at bar there was not in reality any new em-ployment. The character of work was the same, viz.: labor and work done on the mine. The amount to be paid varied with the peculiar character of the work at different times.

We have carefully considered all the testimony and are
satisfied that there was not in the eye of the law any such
stoppage or change of work as created independent jobs or
contracts requiring the filing of separate liens.   The miners
worked under the direction of the foreman of the Occidental
M. and M. Co. as well under the contracts as when working
by the day.   We think it was proper to include the work
done under the contracts with the work done by the day,
and to treat the employment as one continuous transaction
for the purpose of ascertaining the time within which the
liens should be filed.   *Singerly* v. *Doerr*, 62 Penn. State R.
12; *Fitch* v. *Baker*, 23 Conn. 567.

It is next insisted by appellants that the lien of Wm.
Tonkin does not upon its face entitle the party claiming it
to any lien.   It is recited in said instrument that "said lien
is to secure the performance of a contract for the payment
of seven hundred and thirty-nine $\frac{88}{100}$ dollars in U. S. gold
coin, as specified by note.   [A copy of which is set out in
the lien.]   The above note was given as a settlement
according to a verbal agreement for labor done as a miner
in extracting ore from and working in said Occidental mine,
from the last day of February, A.D. 1869, to the fifth day of
October, 1870."   While we think the better practice would
be to state more clearly the character of the work, by whom
and for whom done, yet, viewed in the light of the statute
requirements, we do not consider that the statement is so
defective as to prevent the enforcement of the lien.   See
Stats. 1867, 48, Sec. 1; Stats. 1861, 35 and 36, Secs. 2 and 5;
*Brennan* v. *Swasey*, 16 Cal. 142; *Selden* v. *Meeks*, 17 Cal.
129.

As a further objection to this lien it is claimed: first, that
the note was received by Tonkin in full payment of the debt;
second, that if received "only as a conditional extinguish-
ment of the debt for work, it became upon its sale and
transfer to plaintiff *an absolute extinguishment of the debt and
waiver of the lien.*"   We have carefully examined the author-
ities cited in support of this position.   In *Scott* v. *Ward*, (4
Iowa, 112) it was held that "if the note had been nego-

tiated or had passed from plaintiff's control to the ownership of another the lien given by statute would be lost. Such transfer would be regarded at law as a waiver of the lien." In the same case the court say: "It has repeatedly been decided by this court that the acceptance of a note is not a relinquishment of a mechanic's lien." The notes referred to had not been actually negotiated, and the opinion of the court simply decided that the court below erred in refusing to admit the lien in evidence, the indorsement of the notes being in blank and having been erased. In *Morrison* v. *Steamboat Laura*, 40 Mo. 261, the plaintiff had accepted notes and then discounted them, and afterwards took them up and brought suit to enforce the lien. The plaintiff had the notes at the trial and offered to cancel them. Walker, J., said: "According to the well settled principles of law the lien was neither waived or destroyed." The plaintiffs "had lost none of their rights and were fully entitled to their lien." In *Raymond* v. *Strobel*, 24 Ills. 113, where it was insisted "that by taking the note of the owner of the premises the petitioner lost his lien," the court say: "While the taking of other security, either on property or that of individuals not parties to the transaction, would have the effect to discharge the premises from the lien, yet the mere settlement and adjustment of accounts and taking the note of the owner of the premises who incurred the debt is in no sense a change of security, or security of any description. The note when taken is only evidence of the debt, and cannot be held to affect the lien."

The note under consideration was taken by Tonkin from the owner of the mine upon which the work was done. It was taken upon a settlement and adjustment of the accounts as evidence of the amount due. Tonkin's lien was assigned the same as the others, to enable plaintiff to bring this suit in his name. The note was indorsed in blank by Tonkin and delivered to the attorney who commenced this action. The note remained in the possession of said attorney until the day of trial, when it was offered and admitted in evidence to support the lien, and was filed as an exhibit in this

case. Under the law, as applied to the state of facts shown by this testimony, no rights of Tonkin or plaintiff were relinquished or lost by the acceptance or transfer of this note.

We have examined all the objections made to each individual lien and consider them without merit. The statute in regard to mechanics' liens was intended by the legislature as a protection to material men, contractors and laborers, and lien claimants are required substantially to comply with its provisions in order to obtain the security which it affords. As was said in *Putnam* v. *Ross* (46 Mo. 338): "The whole course of legislation on the subject shows that it has been the intention of the legislature to avoid unfriendly strictness and mere technicality. The spirit and purpose of the law is to do substantial justice to all parties who may be affected by its provisions."

Having this object in view we have endeavored to carry out the intention of the legislature, and to give the lien claimants the benefits they are entitled to under the law, by a fair and liberal construction of the statute.

The order appealed from and the decree of the district court are affirmed.