Points decided.

[No. 770.]

## JOHN S. CAPRON, Appellant, *v.* W. H. STROUT, ET AL., Respondents.

Mechanics' Liens — Repeal of old Law and Passage of New Act. — Where a law relating to mechanics' liens is repealed by a new law containing all the essential parts of the law repealed: *Held,* that the repeal of the old law does not destroy existing rights thereunder. (*Skyrme* v. *Occidental M. & M. Co.,* 8 Nev. 220, affirmed.)

Idem — Foreman of Mine entitled to Lien. — Where a foreman of a mine is employed to "boss" the men at work in a mine, keep their time and give them orders for their pay: *Held,* that his employment is of that kind that is protected by the lien law.

Appropriation of Payments. — Where the foreman of the mine also boarded men for the mine-owner, and at different times received money not exceeding amount due for board, no application being made by either party at the time of payment: *Held,* that the foreman at the time of filing his lien for work had the right to appropriate the money to the board account.

Idem — Mortgagee no Right to object. — *Held,* that the mine-owner and the foreman had the right to make the appropriation without consulting Capron, who held a mortgage on the mine, and that the mortgagee could not object to the manner of appropriation.

Verbal Contract at Stipulated Price per day, Payable Monthly, Construed. — Where a foreman of a mine is employed at a stipulated price per day, to be paid monthly, and when he continues work for more than one year after his employment without any new agreement being made: *Held,* a contract from month to month that might have been terminated by either party at the end of the month, without incurring any liability.

Idem — Rights of Mortgagee — Notice of Lien-holder. — Where the mine-owner mortgaged the property subsequent to the contract with the foreman for labor: *Held,* that all the work done by the foreman subsequent to the execution of the mortgage, after the expiration of his then current month, was done under contracts made by him after legal notice of the mortgage, and his lien for such work is subordinate to the mortgage.

Mechanics' Lien, when must be filed — Different Contracts. — When the work is continuous, although done under different contracts, the lien is preserved by giving notice within sixty days after the work is completed. (*Skyrme* v. *Occidental M. & M. Co.,* 8 Nev. 220, affirmed.)

Appeal from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*Hillhouse & Davenport,* for Appellant.

I. The law under which the lien is claimed was repealed March 2, 1875. (Stats. 1875, 122.) In *Skyrme* v. *Occ. M. & M. Co.,* this court, under the authority of Massachusetts and other cases, held, that the new law was a substitute for and took the place of the law repealed. The terms of the new were the same as the old, so far as the liens sought to be enforced were concerned; the new, then, only gave additional liens. In the present instance, the new law takes away the right of a lien holder, to have his lien attach from the *commencement* of the labor. The new law only allows a lien for labor when such labor was *performed* prior to the mortgage. The old dated the lien from the commencement of the labor. Then we find the new law curtailing the liens allowed under the old, instead of adding to them, as did the law considered in 8 Nevada. This repeal of the old law made the lien of laborers subject to mortgages, only so far as such labor was performed prior to such mortgages.

A lien law only gives a remedy, and is subject to the control of a legislature. (28 U. S. Digest, p. 393, sec. 1; 54 Maine, 345; 2 Kent, 852, note; 2 Wall., U. S. 458; 4 Minn. 546; 8 Id. 34; 35 Maine, 73.)

Where work is done partly under one lien law, and partly under another, the remedy is under the last law. (4 Scam. Ill., 527–535.) The lien is only statutory—only effects the remedy—and is entirely subject to the control of the legislature. The lien is a mere incident to the contract. (4 Minn. 546; 8 Id. 34; 54 Maine, 345.)

II. When Capron took his mortgage, he was only required to take notice of such legal valid contracts, as could, under the law, exist, upon which liens would attach. (See 26 Ill. 426; 4 Scam. Ill. 527–535.) When Stuart went to work for Stuart & Wermuth the contract was verbal; that contract cannot be implied by law to extend any time more than from day to day, or month to month; no express agreement was made for any particular time; so the law is left to imply a contract under which the lien will attach; that very law which is invoked to make the contract provides that no con-

tract, unless in writing, shall be valid, unless to be performed within a year. Now Stuart went to work under a verbal contract. Capron is presumed to know the law: that verbal contracts cannot by implication extend beyond one year, because it could not be made valid for longer than that time by express agreement, unless such agreement was in writing. Verbal contracts cannot be made for a longer time than one year. (See Comp. L. of Nev., vol. 1, 90; Chitty's Cont., 71–2, also 503–504; 1 Hilliard on Cont., 415–16.) That a contract within the statute of frauds will not support a lien.) See Phillips on Mech. Liens, 162, sec. 112; 9 N. Y., 435.)

III. The contract under which Stuart worked is not entire, because not with the same parties. Entirety must mean something. The law distinctly says "this word denotes the whole," etc., entire, "that which is not divided, the whole." When a contract is entire, it must generally be performed before the party can claim compensation, etc. (See 9 Gray, Mass. 394; 21 Ill. 429–436; 35 N. Y. 96: 6 Gray, Mass. 533; 2 E. D. Smith, N. Y. 689; 2 Cal. 90; 26 Id. 285; 50 N. Y. 360; Phillips Mech. Liens, 15, 23, 168.)

IV. Capron had the right to take his mortgage, with reference to such lien as Stuart might have under a valid contract. (*Tobey* v. *Berley*, 26 Ill. 426; *Wilder* v. *French*, 9 Gray; *Cook* v. *Vreeland*, 21 Ill. 436.)

If the contract was verbal and could only be valid in law for one year, should not Capron, "a subsequent party in interest," have a right to insist upon its being restrained at that limit?

V. Under our law, "*laborers or persons performing* labor" are given the extraordinary remedy to collect their wages; but in this case, the act is sought to be made a security to a foreman of those who perform the labor. (See 40 Cal. 187; 4 Watts & Serg., Penn. 257.)

*Thomas Wren*, for Respondent.

I. The act of March 2, 1875, was not intended by the legislature to destroy rights that had accrued under it. The act re-enacts many of the provisions of the act of 1871. Its

general provisions with reference to filing and enforcing the liens are substantially the same. It took effect simultaneously with the repeal of the act of 1871, and was intended to be substituted for it, and instead of annulling the act of 1871, it had the effect to continue it in force so far as existing rights thereunder were concerned. In practical operation and effect, therefore, it is rather to be considered as a continuance and modification of the act of 1871, than as an abrogation of it, and the re-enactment of a new one. (*Skyrme* v. *Occidental M. & M. Co.*, 8 Nev. 219, and authorities there cited.) The Legislature could not divest Stuart of his vested right to a lien existing at the date of the repeal of the law of 1871. (*Christman* v. *Charleville*, 36 Mo. 610; *Hallahan* v. *Herbert*, 11 Abb. P. R. N. S. 326; *In re Hope M'g. Co.*, U. S. C. C. Rep., 1 Saw. 710; *Weaver* v. *Sells*, 10 Kan. 609.

II. The rights of parties under mechanics' lien laws are to be ascertained and fixed by the law in force when the contract was made, but such rights are to be established and enforced by the laws existing at the bringing of the suit. (Phillips on Mech. Liens, 35–6; *Willamette* v. *Riley*, 1 Oregon, 183; *Andrews* v. *Washburn*, 3 S. & M., Miss. 109.) In other words, Stuart, under the lien law of 1871, had a right to a lien from the time he commenced work up to March 2, 1875, but that right he had to establish and enforce in the mode prescribed by the lien law passed March 2, 1875, and that is precisely what he has done.

III. The law allows a lien not only to miners, but also to all other persons who work or labor upon a mine. Under similar statutes it has been frequently held that architects and superintendents of work are entitled to liens. (Phillips on Mech. Liens. 222, sec. 158; *Knight* v. *Norris*, 13 Minn. 473; *Mulligan* v. *Mulligan*, 18 La. An. 20; *Bank of Penn.* v. *Grier*, 35 Penn., 11 Cary, 423; *Jones* v. *Shawhan*, 4 W. & S., Penn., 257.)

IV. It does not follow, because Wermuth sold his interest in the mine to Stuart that the partnership between them to work it, was dissolved. They owned other mines and a furnace together. For aught that appears from the findings they may have continued to work the Hoosac mine in con-

junction with their other mines, and to smelt the ores at
their furnace; or Wermuth may have reserved the right
at the time of the sale to continue to work the mine with
Strout for a year, or until paid for, or any one of many ar-
rangements may have been made between them for the
working of the mine together, notwithstanding the sale of
Wermuth's interest to Strout. (*Shelby* v. *Houston*, 38 Cal.
410; *Smith* v. *Penny*, 44 Id. 161; *Figg* v. *Mayo*, 39 Id. 262;
*Lovell* v. *Frost*, 44 Id. 471; *Hixon* v. *Brodie*, 45 Id. 275;
*Servanti* v. *Lusk*, 43 Id. 238; *Smith* v. *Cushing*, 41 Id. 97;
*Carpenter* v. *Small*, 35 Id. 346; *Clark* v. *Willett*, 35 Id. 534;
*Steinback* v. *Krone*, 36 Id. 303; *Lick* v. *Diaz*, 37 Id. 437;
*King* v. *Wellman*, 38 Id. 595; *City of Oakland* v. *Whiffle*, 39
Id. 112; *Kusel* v. *Sharkey*, 46 Id. 3; *Tubbs* v. *Ghirardelli*,
45 Id. 231.)

If Wermuth alone had originally contracted with Stuart,
and had subsequently sold to Strout, Stuart would still have
been entitled to his lien. (Phillips on Mech Liens, 326–27,
secs. 226–7; *Van Court* v. *Bushnell*, 21 Ill. 624; *Roach* v.
*Chapin*, 27 Ill. 196; *Amer. F. Ins. Co.* v. *Pringle*, 2 S. &
Rawle, 138; *Keller* v. *Denmead*, 68 Penn. 449; *Edwards* v.
*Derrickson*, 4 Dutch, N. J., 45; *Vandyne* v. *Vanness*, 1 Halst.
Chan. R. N. J. 485; *Dunklee* v. *Crane*, 103 Mass. 470; *Mears*
v. *Dickinson*, 2 Phila. 19.)

V. The contract between Stuart and Strout was not one
that by *the terms thereof* was to be performed within one
year from the making thereof. It was a contract in fact for
no specified length of time, just such a contract as is usually
made by mine-owners and their employees—one under
which the employee may quit when he pleases, and the
mine-owner may discharge his employee when he pleases,
and such contracts are always held valid. (*Roberts* v. *Rock-
bottom Co.*, 7 Metc. 46; *Kent* v. *Kent*, 18 Pick. 569; *Fenton*
v. *Embers*, 3 Burr. 278; *Wells* v. *Hostin*, 4 Bing. 40; *Lyon* v.
*King*, 11 Met. 411; *Foster* v. *O'Blenis*, 18 Mo. 88.)

VI. As between Strout and Wermuth and Stuart, Strout
and Wermuth failing to make any application of the pay-
ments made by them to Stuart at the time the payments
were made, Stuart afterwards had the right to apply all pay-

ments to the account of board. (*Haynes* v. *White*, 14 Cal. 446.)
There is no distinction to be made between the rights of
debtors in this respect and the rights of other creditors.
(*Stewart* v. *M'Quaide*, 48 Penn. 195; *Waterman* v. *Younger*,
49 Mo. 413; *Haynes* v. *White*, 14 Cal. 446.)

By the Court, BEATTY, J.:

This is a suit to foreclose a mortgage given by Strout and
Wermuth to the plaintiff. Robert Stuart was made a party
defendant, and in his answer claimed a preferred lien upon
the mortgaged premises under the provisions of the laws
securing liens to mechanics, miners and others. The dis-
trict court, in its decree, has allowed his claim, and the
plaintiff appeals from the judgment upon the ground that
the findings of fact do not support that part of the decree
which gives priority to the miner's lien. The substance of
that portion of the findings affecting the points to be here
decided is as follows: Plaintiff's mortgage was recorded
February 25, 1874. Stuart had commenced work on the
mine June 24, 1873, as foreman, under a verbal contract
with Strout and Wermuth, the mortgagors. No time was
agreed upon that his work should continue. He was to re-
ceive eight dollars per day, payable monthly. His duties
were to act as general foreman, to "boss" the men who
were at work in the mine, keep their time, and give them
orders for their pay at the end of each month. He con-
tinued in this employment without any further contract
until May 21, 1875. He filed notice of his lien June 3,
1875. During his employment as foreman of the mine, he
also boarded men for his employers, and received money
from them, not exceeding the amount due him on board
account. No application of the sums so paid was made by
either party, at the time, to any particular account, but
when respondent filed his notice of lien, he appropriated
the amount he had received to the board account. Upon
these facts the court concluded that the respondent was en-
titled to a preferred lien for his wages up to March 2, 1875,
amounting to $4080, and the decree directs that sum to be
paid to him out of the net proceeds of the sale of the mort-

gaged· premises, before anything is paid to Capron, the mortgagee.

The first objection of the appellant to this judgment is that the respondent's right to a lien for work done prior to March 2, 1875, was destroyed by the repeal on that day of the law by which it had been secured. But we think this point has been settled adversely to the claim of appellant by the decision of this·court in the case of *Skyrme* v. *Occidental M. & M. Co.* (8 Nev. 219). In this case as in that, the repealing act contains all the provisions of the act repealed, which are necessary to support respondent's right to a lien, and it must be held, both on principle and authority, that the legislature never intended, by the repeal of the old law, to destroy existing rights. (C. L., sec. 126–140, and Stat. 1875, 122.) The only effect of the new law, so far as this case is concerned, was to give Capron's mortgage priority to any lien for work done after its passage, and that effect is allowed to it in the conclusions and decree of the court.

The next point of the appellant is, that Stuart's employment was not of that kind that is protected by the lien law. It is said that he performed no work or labor in or upon the mine, and it is argued that the intention of the law was to secure those only who perform labor upon the mine with their hands; that to give it a wider construction, one that will make it include the wages of a foreman like Stuart, will make it cover the case of a general superintendent and other officers of a corporation, and thereby impair the remedy of those who are the special objects of the legislative care. We do not admit that no distinction could be made in this respect between a foreman of miners and the superintendent of a company, but whether there could or not, we have no doubt that respondent's claim comes within the spirit as well as the letter of the law. According to the findings, he certainly did work in the mine, though not with his hands, and it is clear that the direct tendency of his work was to develop the property. We think the foreman of work in the mine is as fully secured by the law as the miners who work under his direction.

Appellant next contends that the respondent had no right as against him, to appropriate the money received from Strout exclusively to the board account, and that the court should make the appropriation to the oldest claims; that is, that it should be appropriated in part, at least, to the labor account. No reason is given, and no authority is cited to sustain this proposition, and we think it cannot be sustained. Clearly, Strout and Stuart had the right to make appropriations without consulting Capron, and if Strout has no objection to the appropriation which Stuart has made, it is difficult to see upon what ground Capron can object.

The appellant complains that the findings and decree give the respondent a preferred lien for certain sums claimed by him under an agreement with Strout that his wages as foreman should continue during a period of thirty days that he was absent from the mine, and that his wages should be doubled for a period of four months if he had to file notice of lien or commence suit. It is unnecessary to express an opinion as to the right of a miner to a lien on the mine for wages not earned by labor on the mine, or for the amount of a penalty agreed upon in case of failure of prompt payment. It is sufficient to say that, in this case, the claims referred to do not appear to have been allowed as against Capron.

· These points disposed of, we are brought to the most serious and important question involved in the determination of this appeal.

The appellant takes the ground that the contract under which Stuart commenced work did not cover all the time for which his wages are made a preferred lien, and, consequently, that he has been allowed a preferred lien for work done on a contract or contracts made after notice of the mortgage. And he contends that, although the work done by Stuart may have been continuous, if any of it was done on a contract made after notice of his mortgage, that, as to such work, his lien cannot be preferred.

We think that both of these positions are correct. The original contract was for a month's service at most, and was renewed from month to month by the acts of the parties. In England it has long been settled that a general hiring of

a domestic servant, without any specification of time, is a contract for a year's service, terminable on a month's notice from either party, and this rule of construction is founded upon the usage of the country. As to other classes of employees, however, there is no invariable rule, though a hiring for a year will be presumed in the absence of any special circumstance tending to prove that the contract was for a shorter term, but very slight circumstances will rebut the presumption. (See authorities collected in notes to 2 Chitty on Cont., 11 American Ed. pp. 840 *et seq.*) In this country the English rule does not prevail even in regard to the hiring of domestic servants, and as to miners or other laborers employed at so much *per diem*, payable monthly, there is no authority for holding that either employer or employee contracts for more than a month's service. Either party may terminate the employment at the end of the month without notice and without incurring any liability to the other. But if the miner continues to work, nothing being said on either side, the law implies a renewal of the original contract, whatever it was, whether for a day, or a week, or a month.

Counsel for respondent argues, that the finding of the district court that Stuart continued to work "without any further contract" is conclusive that his original contract covered all the work he did. But this position is clearly not maintainable. The finding referred to is one of fact, not a legal conclusion, and only means that Stuart continued to work without any express renewal or change of his contract. The legal conclusion which follows from this fact is, that the contract was renewed from month to month by tacit agreement, evidenced by the acts of the parties, this implication being founded upon the same considerations upon which a tenant who holds over is deemed to hold on the terms of the original demise. The truth, then, was, that every month Stuart worked, he worked under a new contract, not express, but implied.

There is a further reason why the original contract made on the twenty-fourth of June, 1873, cannot possibly be held to cover any work done after June 24, 1874. If it had ex-

pressly provided for more than a year's service, not being in writing, it would have been void (C. L. sec. 289), and the law will not imply a contract which would be void if express. This consideration, however, is not the ground of our decision. It goes upon the ground that Stuart's employment was only from month to month. Capron's mortgage was recorded February 25, 1874, and all the work done by Stuart after the expiration of his then current month was done under contracts made by him after legal notice of Capron's rights, and his lien for such work is subordinate to Capron's mortgage. This construction of the lien law is obviously just and necessary. The language of the statute is: " And all liens herein provided for shall be preferred to every other lien or incumbrance which shall attach upon any property subsequent to the time when the work or labor was commenced," etc.

The question of construction is: What is the meaning of the words, "the work or labor?" What work is meant? Does the statute mean any work that may be done provided it be continuous from a date prior to notice of the mortgage, though partly under contracts made after notice of the mortgage? Or does it mean the work already contracted for before notice of the mortgage? We think the whole spirit of the act requires that its meaning should be limited to the latter sense. And if this construction did not necessarily follow from the language of the act, we should feel bound nevertheless to give it that construction for the reason that this provision of our law is an almost literal copy of a corresponding provision of the California act of April 19, 1856, from which our law is borrowed, and that provision of the California law had been construed before its adoption in this state in the sense here attributed to it. (See *Soule* v. *Dawes*, 14 Cal. 249; 7 Id. 575.)

It does not follow, however, from these views, as contended by the appellant, that Stuart is not entitled to a preferred lien for the work performed under contracts made prior to notice of his mortgage, for the reason that he did not file notice of his lien within sixty days after the comple-

tion of those contracts.. It .was settled in the case of *Skyrme* v. *Occidental M. & M. Co.;* above cited, and we think correctly settled, that when the work is continuous, though done under different contracts, the lien is preserved by giving notice within sixty days after the work is ended.

The judgment appealed from is reversed, and the cause remanded with the directions to the district court to modify the decree in accordance with the views herein expressed, and. with costs to the appellant.