Moses Moore v. The Township of Kenockee.

*Municipal corporations—Injury from defective bridge—Notice to township—Measure of damages—Repeal of statute.*

1. A repealing statute, containing no saving clause, which *substantially* re-enacts the law repealed, does not affect a pending suit brought under the original act.

   So *held*, where judgment in a suit for injuries to personal property, brought under Act No. 244, Laws of 1879, was rendered *after* the repeal of said statute by Act No. 264, Laws of 1887.

2. The act repealed is often an aid in the construction of the repealing act.

3. The word "notice" is not used as synonymous with the word "knowledge" in the proviso to section 2 of Act No. 264, Laws of 1887.

4. Whatever fairly puts a party upon inquiry is sufficient notice, where the *means* of knowledge are at hand, and the omission to make such inquiry charges him with (knowledge of) all the facts which by a proper inquiry he might have ascertained.

5. "A person is chargeable with constructive notice where, having the means of knowledge, he does not use them." *Converse v. Blumrich*, 14 Mich. 120.

6. A general verdict for a plaintiff under Act No. 264, Laws of 1887, for damages sustained by reason of the defective condition of a bridge, will be sustained by evidence tending to show—

   *a*—That the bridge was 14 years old at time of the accident, and that the stringers, a portion of which were produced before the jury and found to be rotten, were of a kind which, as situated, could not be expected to remain sound longer than six or eight years

   *b*—That shortly before the accident the commissioner of highways of the township, and the overseer of the district, in which the bridge was situated, were notified that the same was out of repair, and the commissioner made no examination of the bridge, and the overseer caused it to be replanked, but put in no new stringers.

7. The following propositions contained in the charge of the court are indorsed as correct:

   *a*—It is the duty of a township, through its officers, to exercise reasonable supervision over its roads and bridges, and to see, within practicable limits, that they are kept in a reasonably safe condition for public travel.

*b*—When it is generally known that a bridge has become decrepit, or when it has stood so long that there is much suspicion of it, the officers of the township may not disregard the warning conveyed on the ground of want of *actual* notice of the dangerous infirmity.

*c*—The measure of plaintiff's damages in case of recovery will be such an amount as will justly compensate him for the injury to the engine, and in this connection may be considered the cost of removing it from the creek, the making of reasonable repairs made necessary on account of injuries growing out of the fall, and its reduced value, if any, after such repairs from the value before the accident.

Error to St. Clair.    (Canfield, J.)    Argued April 17, 1889. Decided June 21, 1889.

Case for injuries to property by reason of non-repair of a township bridge.    Defendant brings error.    Affirmed.    The facts are stated in the opinion.

*Atkinson, Vance & Wolcott,* for appellant.

*Avery Brothers,* for plaintiff.

LONG, J.    This action is brought to recover damages to a traction-engine, caused by breaking through a bridge on one of the highways in defendant township, and was tried before a jury, and plaintiff had verdict and judgment for $500. Defendant brings error.

The injury to the engine occurred on August 11, 1886. The plaintiff on that day was passing over what is called "Benner Bridge" with the engine, when some of the stringers broke, and the engine fell to the creek, some six or seven feet below.    It cost $43.25 to raise it out of the creek, and $142.52 to repair it.

Testimony was also given tending to show that the engine received permanent injuries.    This testimony was to the effect that the boiler had braces inside to strengthen it, and it could not be told by an examination whether or not these braces were broken, and that by reason of this uncertainty such a boiler and engine were worth much less after hav-

ing sustained such a fall, even though no injury was apparent.

There was also some evidence that the threshing-machine used with the engine was idle 16 days by reason of the accident, but this was not allowed as an element of damages by the court, and need not be discussed.

Testimony was given on the trial tending to establish such facts and circumstances as that, by the exercise of reasonable care and diligence, the defendant township would have known of the defective condition of the bridge, regardless of whether it had knowledge or had been notified of such condition.

After the jury had been sworn to try the cause, the defendant's counsel interposed the objection that Act No. 264, Laws of 1887, repeals the old law of 1879, which gave a right of action in this class of cases, without a saving clause of actions then pending, and, inasmuch as this suit was not in judgment at the time of the repeal of the law, the right of action fell with the passage of the act of 1887.

The injury to the engine occurred August 11, 1886. Suit was commenced November 19, 1886, and judgment was entered June 8, 1888. The act of 1887 took effect June 27, 1887, and repealed the law of 1879. This was after the injury to the engine, and after the suit was commenced, but before the matter went into judgment in the court below.

We think, however, that the case falls within the rulings of this Court in *Merkle v. Township of Bennington*, 68 Mich. —— (35 N. W. Rep. 846). In that case it was said:

"The repealing statute substantially re-enacts the law repealed, with some slight modifications so as to include in the remedy afforded by its provisions damages for injuries received in consequence of the negligence of municipal corporations to keep sidewalks in repair, and to abolish the common-law liability to actions for negligence against such corporations. Upon consideration of the matter, we have concluded that the plaintiff's right of action is not affected by the act of 1887."

The question came before this Court again in *Alexander v. City of Big Rapids*, 70 Mich.——(38 N. W. Rep. 227), and the Court said, citing *Merkle v. Township of Bennington*, that—

"The section of the statute under which the present suit was instituted was repealed by the act of 1887, but the latter is substantially a re-enactment of the former section (How. Stat. § 1442, and Laws of 1887, p. 345, § 1), and, when such is the case, we have held such repeal does not affect a suit commenced under the first act." -

It is contended, however, by counsel for defendant, that the above cases had each passed into judgment in the court below before the act of 1887 went into effect, and that in the case of *Alexander v. City of Big Rapids* the action was brought under section 1 of Act No. 244, Laws of 1879, while in the present case the action is brought under the second section.

Section 2 of the act of 1887 is substantially a re-enactment of section 2 of the act of 1879. The proviso of this section in the act of 1879 reads as follows:

"*Provided,* that in all actions brought under this act it must be shown that such township, village, city, or corporation has had reasonable time and opportunity, after such highways, street, cross-walk, or culvert became unsafe or unfit for travel, to put the same in the proper condition for use, and has not used reasonable diligence therein."

In section 2, of the act of 1887 it is provided—

"That in all sections brought under this act it must be shown that such township, village, or city has had reasonable time and opportunity, after knowledge by or notice to such township, village, or city that such highways, streets, bridges, sidewalks, cross-walk, or culvert have become unsafe or unfit for travel, to put the same in the proper condition for use, and has not used reasonable diligence therein after such knowledge or notice."

The changes made in section 2 of the act do not in any manner change or affect the *cause* of action.

Section 1 of this act, under which the action in *Alexander v. City of Big Rapids* was brought, provided for a recovery for personal injuries, while section 2 provided for a recovery for injuries to personal property. The fact that the matters involved in the present controversy had not passed into judgment at the time of the repeal of the act of 1879 does not affect the right of recovery here. That part of section 2 which gave the right of action remains substantially unchanged in the act of 1887, except it is extended to injuries received on sidewalks, and the proviso in that section does not affect the right of action. There is no substantial difference between these two statutes, and evidently it was not the intention of the Legislature by the act of 1887 to deprive any one of a right of action which existed under the former act.

The counsel are also in error in supposing that the case of *Alexander v. City of Big Rapids* had gone to judgment at the time of the taking effect of the act of 1887. It was not then in judgment in the court below, but the ruling in that case in this Court followed *Merkle v. Township of Bennington,* before cited.

Some contention arises in the case upon the construction to be given to the proviso of section 2 of the act of 1887; defendant's counsel claiming that it was the intent of the Legislature, in the change made in the language between this and the proviso of section 2 of the act of 1879, that the township must have some *actual* knowledge of the defect, or there must be proof of notice to the officers of the township, whose duty it is to repair, that the bridge is in an unsafe condition for public travel; and counsel contend that there is no proof of these facts in this case, and that the trial court was in error in leaving the whole testimony to the jury, from which they were to determine whether the town had such knowledge or notice.

It appeared upon the trial that this bridge was built in

1872, some 14 years before the injury to this engine, and that the stringers had never been removed or renewed, and that the class of timbers used for stringers, situated as they were, could not be expected to remain sound and fit for that purpose longer than six to eight years. A portion of the stringers were brought before the jury, and were found to be very rotten, and the highway commissioner admitted on the trial that they were unfit for use. The plaintiff had passed safely over this bridge with his engine a day or two before, saw new covering of plank upon it, and it appeared safe. The bridge had four stringers, about three feet apart, and was covered with plank over a space of about seventeen feet. All the stringers but one on the west side broke. The plaintiff, in passing over the bridge, put down two planks lengthwise of the bridge to run the wheels of the engine upon. These planks were sixteen feet in length, twelve inches wide, and two and one-half inches thick.

The plaintiff also gave testimony in addition to the length of time these stringers had been used, and their rotten condition, that in 1885 one Anthony Shutler, who was using a traction-engine during that year, observed the rotten and defective condition of the bridge, and called upon John Ready, who was then commissioner of the town, and notified him of its defective condition, and he promised to look after it. It appeared that this commissioner was deceased at the time of the trial, and this portion of the testimony was taken from the jury, under the charge of the court.

This witness also testified that in 1886 he notified George Brown, who was then commissioner of highways of the town, of the defective condition of the bridges in the township, and that he at this time told Brown that he had notified Mr. Ready the year before about the bridges in the town, and that they ought to be fixed.

It also appeared that the attention of the overseer of highways of that road district had been called to the condition of

the bridge, and he had caused it to be replanked, but put in no new stringers.

At the close of this testimony the defendant asked the court to charge the jury as follows:

"2. The rule regarding liability for failure to inspect and examine roads, etc., as laid down by the Supreme Court in *Stebbins v. Township of Keene*, 55 Mich. 552, was under an old law, and is not applicable to a case under the statute of 1887. The old law made the town liable if it neglected after a reasonable time to repair, etc. (whether the town had notice or not), but the present law requires proof of actual notice and actual knowledge of the defect, and then it must appear that a reasonable time had elapsed after such knowledge or such notice in which to make such repairs, and it must also appear that the town did not use reasonable diligence after such notice or knowledge."

"4. Under this state of facts he must show that the officers of the township had actual notice or knowledge that it had become so defective that the plaintiff could not safely pass over, and without such actual notice or knowledge there can be no recovery.

"5. There is no proof of actual knowledge of any defect in this bridge upon the part of the township officers, and there can be no recovery upon that claim, and if the plaintiff recovers at all, it must be by proof of notice of defects given to the town officers.

"6. There is no proof of notice, except as was given by Shutler to Brown; and if the jury believed that Brown had inspected this bridge, and in good faith supposed it sufficient, and understood Shutler to refer to another road, then there is no notice whatever sufficient to render the town liable under the statute."

These requests the court refused to give in his charge to the jury. The court, however, charged the jury upon this part of the case as follows:

"In regard to the information claimed to have been given to the commissioner by the witness Shutler, you will determine from the evidence what was said, and whether it was sufficient to fairly apprise the commissioner that the bridge was unsafe.     *     *     *     If you believe that to be the fact from the evidence,—that is, that it was unsafe, and

that the town officers, namely, the commissioners or over-seers of highways, had actual notice thereof, and they had unreasonably neglected to repair the bridge, and make it reasonably safe for travel, having sufficient time to do so,—the defendant would be liable: * * * provided that you find that the engine of plaintiff was not of such weight as to be unreasonable to be transported over the bridge, and the plaintiff himself was not guilty of want of ordinary care and caution in crossing it.

"It is the duty of a township, through its officers, to exercise reasonable supervision over its roads and bridges,—to see, within practicable limits, that they are kept in reasonably safe condition for public travel. Its officers may not ignore the dictates of common sense and the lessons of ordinary experience, or refuse to see or refuse to heed what others see and others understand.

"When it is generally known that a bridge has become decrepit, or when a bridge has stood so long that there is much suspicion of it, the officers of the township may not disregard the warning conveyed to take action on the ground of having no actual notice of the dangerous infirmity. This is substantially the rule laid down by the Supreme Court of this State in another case on this subject, and I think it also applicable to this case. So that, if no actual notice of the bridge being unsafe was given to the township officers, still, if they by the exercise of reasonable care, such as men possessed of ordinary and reasonable intelligence might exercise, would have known of such condition, or if through any other means they had actual knowledge that the bridge was unsafe, this would answer the requirements of the statute as to notice or knowledge on the part of the defendant."

It is insisted by counsel for the defendant that they were entitled to have their requests to charge given to the jury, and that the court was in error in this portion of the charge, as under the law of 1879 it was not necessary to show either knowledge or notice to the township, but it was sufficient if such facts existed that they ought to have known, while under the statute of 1887 such actual knowledge by or notice to the township of such defects must be shown before recovery can be had; that it was the intent of the Legislature, in inserting this language in the proviso in the law of 1887, to change

the rule laid down by this Court in cases brought under the act of 1879.

It is true that a statute revising the whole subject of a former statute, and intended as a substitute, although it contains no words to that effect, operates as a repeal of the former law, and the statute thus repealed must be considered as if it never existed, except as to proceedings passed and closed; yet it is often an aid in construing the statute repealing it.

The rule laid down by the trial court in the present case in that part of the charge above quoted certainly comes within the rulings of this Court in numerous cases arising under the act of 1879.

In *Medina Tp. v. Perkins*, 48 Mich. 71 (11 N. W. Rep. 811), Chief Justice GRAVES said:

"The general duty of a township is to exercise, through its officers, a reasonable supervision over its ways and bridges, and within fairly practicable limits to be watchful of their condition and trustworthiness, and see that they are kept in a reasonably safe condition for public travel. Its officers may not ignore the dictates of common sense and the lessons of ordinary experience, and refuse to see or refuse to heed what others see and understand."

In *Stebbins v. Township of Keene*, 55 Mich. 557, Mr. Justice SHERWOOD laid down the rule as follows:

"It is not necessary, in order to charge the township for the injury received, to show that the commissioner of highways or the overseer had previously been informed by some person of the defects in the bridge, or that they or either of them had actually seen the bridge, or had knowledge of the defects. It is made their special duty, when these defects exist or are likely to exist, to examine and ascertain them, and immediately make the necessary repairs. It is only necessary for an injured party to show upon the subject, by proper testimony, knowledge on the part of the officers of such a state of facts as reasonably and necessarily makes it their duty to examine and act in order to protect the traveling public, and their neglect so to do."

The construction of this proviso in section 2 of the act of

1887 for which defendant's counsel now contend is that proof must be made by the plaintiff that such defects exist, and that the township has had reasonable time and opportunity to put the same in repair after *express* knowledge or information of such defects. The language of the statute is, "after knowledge by or notice to such township." The word "notice" is not used as synonymous with the word "knowledge." Whatever fairly puts a party upon inquiry is sufficient notice, where the means of knowledge are at hand, and, if a party omits to inquire, he is then chargeable with all the facts which by a proper inquiry he might have ascertained. This rule has long been established, and is well settled in this State.

In *Converse v. Blumrich,* 14 Mich. 120, Mr. Justice COOLEY laid down the rule as follows:

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them."

The words of the act of 1879 would seem to have made the township liable without regard to the question of notice, but the act has always been construed by this Court that it was only liable in case of negligence, and it could not be held to be negligent until after notice, actual or constructive, that the highways or bridges were out of repair; and the act of 1887 evidently was framed to meet this view, and not to impose new conditions.

We think the charge of the court, taken as a whole, was within the rule, even if the testimony did not show the township had knowledge of the unsafe condition of the bridge; but there was some evidence to go to the jury that the township officers whose duty it was to repair the bridge had knowledge of its unsafe condition, and that question was fairly left for their consideration, under the charge of the court.

Brown was commissioner of highways, and was advised in 1886 that certain bridges were out of repair, this bridge

among the number, and there is no claim that he made or attempted to make any examination of them.

In the same year the overseer of highways of that district was also notified, and the only repair made was the putting on of new planks.

It is contended, however, that notice to the overseer of highways was not notice to the township.

How. Stat. § 1445, provides that highway commissioners, street commissioners, and all other officers having charge of bridges, etc., and the care and repair thereof, are hereby made and declared to be the officers of the township, etc., wherein they are elected; and by section 1379 it is further provided:

" The overseer shall have the care of all bridges within his district, and shall see that the same are kept in repair, and, when the cost of repairing any bridge shall exceed twenty dollars, he shall report to the commissioner the condition of such bridge, and the necessity for such repairs."

Under the circumstances here stated, the court very properly refused the instructions asked by counsel for defendant, and we find no error in the charge as given. It is conceded that this testimony would have sustained the general verdict under the act of 1879. We think it equally clear that it sustains the verdict under the act of 1887.

One more question remains to be considered. Counsel for defendant asked the court to instruct the jury as follows:

" There has been some evidence introduced tending to show that the engine was worth less after repair than before the accident, and was on the assumption that persons knowing the engine had tumbled would not consider it worth so much, even though there may be no visible defects from the fall. Now, I instruct you, as matter of law, that in estimating the difference in value before the accident and after the repair you must not speculate or presume that there were injuries not proven. You should allow damages only for the actual injuries proven."

The plaintiff had introduced testimony tending to show

that after the accident, and after repairs, the flues leaked, and it was hard to keep up steam, and that the engine was loose on the boiler. Mr. Cook, who repaired the boiler, was asked by plaintiff's counsel:

"After you had finished the flues, assuming what you could see as to her condition before going through the bridge, what do you say was her reduced permanent value, or what was the permanent damage to that engine?"

The witness answered, under objection:

"I would not give within three or four hundred dollars, because you don't know what is broke. You take one of those small portable boilers, and there is no way to get into them in order to find out what is broke; and they are braced around the fire-box, I think five inches apart. The ends of these stay-bolts are fastened to the sheeting on the inside of the fire-box, and on the inside of the boiler, riveted over and tapped in it. They are used in order to enable the boiler to have its pressure even all over, and if one is broken that point in the boiler is weakened, and it would naturally tend to break the others."

Mr. Clegg, another machinist, was called by the plaintiff, and asked the following question:

"Now, Mr. Clegg, you have seen that engine before and after the accident. Assuming that on the eleventh of August, 1886, it was in good repair and good condition,—had been fixed up for service that year,—and on that day it broke through the bridge, falling a distance of six or seven feet, and the engine being broken so as to require the repairs indicated in Exhibit A [the bill for repairs], and that as a result of the fall the water escaped from the boiler, leaving the fire in the box, so the flues were melted until all, or nearly all, leaked, and seeing the engine in the condition you have afterwards seen it, after repair, what do you say would be the reduced market value of the engine on account of that fall, if anything?"

The witness answered:

"I would not think she was worth within three or four hundred dollars, because an engine falling in that shape certainly must strain it terribly, and that I noticed in the smoke-chamber end that she had leaked in the bottom or close to

the bottom where those castings were broken, and that would stand to show, in my idea, that there was a terrible wring to the body of the boiler, causing a strain of the stay-bolts very much."

He was then asked the difference in value of the engine before and after the accident, and answered that before the accident she was worth from $1,000 to $1,100, and after the fall from $600 to $700.

Mr. Shutler was called, and asked what was the value of the engine as it lay in the creek after the fall, and said it only was worth one-half cent a pound, for old iron, because when a concern is wrecked like that something will happen, and farmers will kick continually, and you cannot earn anything with it; consequently it is no good, and you lose more than you make; that the engine before the accident was worth from $1,100 to $1,200, and after its repair from $500 to $600, if you could find a man who wanted it.

The deposition of Mr. Louis Minnie was read. He had been on the lakes as engineer for several years, knew this engine, and helped to fix it up before the accident, and worked upon it afterwards. He testified that it was not worth as much into $300 after it was repaired as it was before the accident; that there might be bolts and braces broken inside the boiler, which would cause great injury, and a man buying a boiler of this kind does not know what he is buying; that it will never be as valuable as before the accident.

This is substantially all the evidence given on the trial regarding the permanent injury to the engine.

Upon the question of damages the court charged the jury as follows:

"Should you conclude that the plaintiff is entitled to damages, you should award him such an amount as will justly compensate him for the injury to the engine; and in regard to this you may consider the amount necessary to remove the engine from the creek, the value of reasonable repairs made necessary on account of the injuries growing

out of the fall, and the reduced value of the engine, if any, after such repairs were made from its value immediately before the accident."

We think the court very properly refused the defendant's requests to charge, and we see no error in the charge as given.

The complaint is made that this testimony, or the most of it, was incompetent, and that the estimate of damages made by these witnesses was purely speculative. This is not so. One possessed of ordinary knowledge of the construction of such machinery could not resist the inference that the engine must have received some permanent injury by the fall, and, when coupled with the fact that fire was kept up sufficient to generate steam to propel it along the highway, and by the fall the water escaped from the boiler, necessarily some injury must result to the flues from the fire. These witnesses, however, were mechanics, machinists, experts in the business, and speak from actual examination and experience, giving reasons for their opinions. We think the testimony was competent, and tended to show some permanent injury.

We have examined the other questions raised, but need not discuss them.

We find no error in this case, and the judgment of the court below must be affirmed, with costs.

The other Justices concurred.