SAYER, tax-collector, v. BROWN *et al.*, commissioners, *et al.*

1. The disputed questions of fact in this case can not be considered by this court, as the evidence submitted upon the trial in the court below is neither incorporated in the bill of exceptions, nor sent up, as a part of the record, in a brief of evidence approved and made a part of the record by the trial judge.
2. Affidavits and documents offered in evidence and ruled out, and amendments to pleadings offered and disallowed, form no part of the record of a case, and can not be sent up to this court as such.
3. A mere general allegation that an act of the legislature is unconstitutional, because of the presence therein of a designated provision, without calling attention in any way to the particular provision of the constitution with which it is claimed that it conflicts, is too vague and indefinite to invoke a decision upon the validity of the statute.
4. The act of July 30, 1903 (Acts 1903, p. 332), amendatory of the act of December 20, 1900 (Acts 1900, p. 168), creating a board of commissioners for the County of Douglas, does not violate that provision of the constitution which prohibits the passage of any statute containing matter different from that which is expressed in the title thereof.
5. An allegation that a given statute is unconstitutional, in that it violates the constitutional provision which prohibits the passage of a special law in any case for which provision has been made by an existing general law, which fails to point out the general law which is claimed to cover the same subject as such statute, presents no question for decision by a court.
6. The above-mentioned act of July 30, 1903, did not repeal the act which it purported to amend.
7. An act creating an office may be amended by completely changing the powers and duties appertaining thereto, without destroying the office or removing therefrom the person who is lawfully filling the same.
8. The act of July 30, 1903, in question, went into effect upon its passage, except in so far as it provided for a change in the number of members of which the board of county commissioners should consist.
9. Under the powers conferred upon them by the act of July 30, 1903, the county commissioners of Douglas county have authority to bring the tax-collector of that county to a settlement of his accounts with the county.
10. This authority is not confined to matters in the tax-collector's office which have arisen since that act was passed, but embraces any, accounts of such officer which have not been lawfully settled.
11. Whether or not the board of county commissioners have the power to punish the tax-collector for contempt, for a failure or refusal on his part to

appear before the board with the books, receipts, etc., appertaining to his office, after being notified to do so, the fact that the commissioners threaten to impose such fine upon him affords no reason for enjoining them from so doing. If they have no such power and should impose a fine upon him and attempt to collect it, his remedy at law is ample.

Argued January 21, — Decided February 16, 1904.

Petition for injunction. Before Judge Bartlett. Douglas superior court. October 10, 1903.

*J. S. James* and *Roberts & Hutcheson*, for plaintiff.
*W. A. James* and *J. D. Kilpatrick*, for defendants.

FISH, P. J. In considering this case, we are necessarily confined to the pleadings and such facts as the allegations on the one side and the admissions on the other establish, as there is not a particle of the evidence which was introduced in the trial court, nor of that which it is alleged was offered and erroneously ruled out, properly before us.

1. An attempt has been made to send up, as parts of the record, both the evidence introduced and the evidence alleged to have been erroneously rejected. There is nothing to identify any of it as evidence which was introduced or offered upon the trial of the case. The trial judge simply certifies that the bill of exceptions "is true, and contains and specifies all of the evidence and specifies all of the record material to a clear understanding of the errors complained of." No evidence whatever is contained in the bill of exceptions, and not an affidavit or document sent up as a part of the record is identified by the judge as evidence introduced, or evidence offered, at the hearing. The Civil Code, § 5528, provides: "If the case is not one in which a judgment on a motion for new trial is to be reviewed, the plaintiff in error . . shall incorporate in the bill of exceptions a brief of so much of the written and oral evidence as is material to a clear understanding of the errors complained of, and shall specify therein such portions of the record as are material to such understanding." Section 5529 provides: "If the plaintiff in error shall so elect, he may have such brief of so much of the evidence as is necessary to a clear understanding of the errors complained of, approved by the judge, and made a part of the record and sent up by the clerk as a part thereof, rather than have the same incorporated in the bill of exceptions." Neither of these methods of having the evidence

which was introduced upon the hearing of the case sent up to this court was adopted by the plaintiff in error.    No brief of the evidence was incorporated in the bill of exceptions, nor was any brief thereof approved by the trial judge and made a part of the record.    Instead of pursuing either of these methods, the plaintiff in error simply specifies, as parts of the record necessary to a clear understanding of the case, various affidavits, and the clerk sends up what purport to be copies of such affidavits.    As these affidavits were no part of the record originally, and were not made such by the judge in the way provided by law, the clerk could not send them up as such.    There is nothing whatever which legally informs this court that they were ever used upon the hearing of the case.    Indeed, we may add, the plaintiff in error does not, in his bill of exceptions, allege that they were so used, but contents himself with simply specifying them as parts of the record to be sent up by the clerk.    *Hancock* v. *McNatt*, 116 *Ga.* 297, and cit.

2.    Affidavits and documents offered in evidence and ruled out by the judge form no part of the record, nor could they form any part of a brief of the evidence upon which the case was tried. They should have been incorporated in the bill of exceptions. Besides, assignments of error upon the rejection or admission of evidence can not considered when they do not set out the evidence rejected or admitted.    As this has been often decided, we simply cite the following cases.    *Benton* v. *Baxley*, 90 *Ga.* 297; *W. U. Telegraph Co.* v. *Michelson*, 94 *Ga.* 436.    If it was the intention of the plaintiff in error to assign error upon the ruling of the court in reference to the amendment referred to in the bill of exceptions as having been offered and disallowed, he failed to do so; and even if he had assigned error upon such ruling, the assignment could not have been considered, because the proposed amendment is neither set out in the bill of exceptions nor attached thereto as an exhibit, but is sought to be brought up in the record, of which it formed no part.    *Sibley* v. *Mutual Reserve Fund Life Association*, 87 *Ga.* 738; *Barnett* v. *Railway Co.*, Ib. 767; *Moore* v. *Guyton*, 110 *Ga.* 330.

3.    The main contention of the plaintiff in error is, that the persons claiming to be the county commissioners of Douglas county and acting as such are doing so without any authority of law; that the offices which they claim to fill have no legal exist-

ence in Douglas county. This contention is based upon the alleged unconstitutionality of the statute under which they were elected and the statute from which they claim to derive the power and authority which they seek to exercise. The statutes are the act of December 20, 1900 (Acts 1900 p. 168), creating a board of county commissioners for the County of Douglas, and the act of July 30, 1903 (Acts 1903, p. 332), amendatory thereof; the commissioners having been elected under the provisions of the original act, and claiming the powers conferred by the amendatory act. In the petition filed by the plaintiff each of these acts was alleged to be unconstitutional and void, but in the brief of his counsel, filed in this court, no allusion is made to the alleged unconstitutionality of the original act, the whole argument upon the constitutional question being directed against the amendatory act. We might, therefore, treat the allegation as to the invalidity of the act of 1900 as having been abandoned. It might well have been abandoned, as it was not made in such a way as to present any question for determination by the court. The petition alleged that this act was unconstitutional because of the presence therein of certain provisions, but failed to allege, or indicate, wherein the presence of such provisions renders the statute unconstitutional. A mere general allegation that an act of the legislature is unconstitutional, without calling attention in any way to the particular provisions of the constitution with which it is claimed it conflicts, is too vague and indefinite to invoke a decision of the court upon the validity of the statute. *Jones* v. *Oemler*, 110 *Ga.* 202 ; *Savannah Railway Co.* v. *Hardin*, Ib. 437–8 ; *Laffitte* v. *Burke*, 113 *Ga.* 1000.

4. One ground upon which the constitutionality of the act of July 30, 1903, is attacked is that " it sets out matter in the body of the bill that is not referred to in the title to the act nor in any way covered thereby." The title of this act is as follows : " An act to amend an act creating a board of county commissioners for the County of Douglas, defining their duties, etc., approved December 20, 1900, by providing for the monthly meetings of said board of commissioners for the transaction of county business, by reducing the number of said board from five to three, and by more particularly describing the power, jurisdiction, duty, authority of said board of commissioners, and for other purposes." In support of

the contention that the body of the act contains matter different from that which is expressed in its title, it is contended that the title of the act is to amend the act of December 20, 1900, while the body of the act repeals "all the essential parts" of that act and substitutes therefor "other legislation, not referred to anywhere in the title of the amending act." In other words, the gist of the contention, as we understand it, is that the change wrought in the original act by the amendatory act is so great as to practically destroy the original act, and substitute entirely new and different legislation for it; and that this can not be done by an act the title of which declares it is an act to amend the existing act. We need not stop to inquire whether the act of 1903, with its present title, would be constitutional if the effect of its provisions were to wholly repeal the act of 1900, which it purports to amend; for it is very clear that it did not repeal the act of 1900, even by implication. It did not abolish the board of county commissioners created by the act of 1900, nor interfere with the tenure of office of the commissioners elected under that act, nor change the terms of office of the county commissioners, nor the times when or the manner in which they should be elected. All these matters, and others which need not be mentioned, were left as in the original act; and we shall presently see that the contention that the original act was repealed because the amendatory act declared that section 1 of the original act, which section provided for the creation of the board of commissioners, and section 10 thereof, which defined their duties, should be stricken, is without merit. It is true that the amendatory act does work a radical and sweeping change in the original act. By the original act the board of county commissioners was merely an advisory body to the ordinary as to designated county matters, and had no original jurisdiction whatever, while by the amendatory act the board is given exclusive jurisdiction as to these and as to other matters not covered by the original act. But though an amendatory act may radically change the provisions of the act which it amends, this does not render it obnoxious to that constitutional provision which prohibits the passage of an act which contains matter different from that which is expressed in its title. Whether it does or does not violate this provision of the constitution must be determined, not by the extent to which it changes the original act,

but by a comparison of its statutory contents with the scope of its title. If its provisions are fairly covered by its title, it is not unconstitutional because those provisions may radically change the statute which it amends.

In determining whether an amendatory statute contains matter different from that which is expressed in its title, the title of the original statute may be considered when, as in the present instance, it is recited, or substantially set forth, in the title of the later act, as it thereby becomes a part of the title of the latter; and whatever is within the scope of the title of the original act is within the scope of the title of the amendatory act, unless the title of the latter is otherwise so limited and restricted as to forbid such a construction. *Newman* v. *State*, 101 *Ga.* 534, and cit.; *Dallis* v. *Griffin*, 117 *Ga.* 408. Indeed, this court decided in *Alberson* v. *Hamilton*, 82 *Ga.* 30, that "Where the title of a third statute is to amend a second, and the object of the second was to amend the first, the title of the third is broad enough to comprehend the whole subject-matter of the first and second." The original act was entitled, "An act to provide for the creation of a board of county commissioners for the County of Douglas, and to define their duties, and for the purposes therein stated." There is nothing in the amendatory act which is not germane to the creation of a board of county commissioners for the County of Douglas and the definition of their duties. The conferring upon the commissioners exclusive jurisdiction and control over specified county matters devolves upon them the duty of exercising such jurisdiction and control; and a definition of their powers and jurisdiction is a definition of their duties. "As the duties may be defined without limit, any duty defined is necessarily within the scope of the title and embraced in the subject-matter." *Churchill* v. *Walker*, 68 *Ga.* 686. When to this it is added that the title of the amendatory act declares its purpose to be, not only to amend an act with the title which we have been considering, but to more particularly describe "the power, jurisdiction, duty, authority of said board of commissioners," it seems superfluous to say that the title of the amendatory act carried full notice of a purpose to deal with the power, jurisdiction, and authority of the county commissioners, and that any provision with reference thereto would be covered by the title.

5. Another ground upon which the act of 1903 is alleged to be unconstitutional is, that it is a "violation of that clause in the State constitution which is set forth in section 5732, Code of Georgia, 1895, . . which provides, 'No special law shall be en-acted in any case for which provision has been made by an existing general law,' etc. For petitioner says there were existing general laws of this State covering the subject of said act, especially section 10; for all the subject covered by said section 10 provisions had been made . . by existing general laws in this State." The question here sought to be made was not properly presented to the court below, and hence is not properly before this court; for the petition fails to state, or indicate, what general laws are claimed to cover the subjects dealt with by section 10 of the act in question. If the question had been properly presented, we apprehend the contention of the petitioner could not have been sustained. The constitution, art. 6, sec. 19, par. 1 (Civil Code, § 5879), provides: "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties." There is no general law upon the subject of the powers, duties, and jurisdiction of county commissioners, and, as was said by the present Chief Justice, in *County of Pulaski* v. *Thompson*, 83 *Ga.* 274, the constitution does not require the legislature to pass a general law defining the duties and powers of county commissioners. It was held in that case that "the legislature has the power to pass separate and distinct acts for any counties which require county commissioners; and it is not necessary that these acts shall be uniform in their operation in all such counties." Ib. 270.

The petition further alleged that the act of 1903 "is void wherein it provides for the cancellation of tax fi. fas.," because "there is a general law of this State, making provisions in such cases and fully covering the subject therein stated, and that provision is unconstitutional for the reason above stated." It also alleged that the part of this act which provides that the board of commissioners shall have the power to declare the office of county treasurer, or the office of tax-collector, vacant, "under the conditions therein named, is void and violates the constitution of Georgia, because the provision in relation to the removal of such officers . . was, at the time of the passage of the act, covered

35

by provisions in the laws of this State in the general statutes thereof." Neither of these allegations presented any question for determination by the court, as they each failed to point out what general law was claimed to cover the subject dealt with in the portion of the act alleged to be unconstitutional. Even if both of these provisions of the act were unconstitutional, the validity of the whole act would not be affected, but these particular provisions thereof would simply be nugatory.

6. Another allegation of the petition is, that the act of 1903 really repealed the act of 1900, which it purported to amend, and therefore the defendants, who were elected as county commissioners under the provisions of the act of 1900, went out of office upon the passage of the act of 1903. From the brief of counsel for the plaintiff in error it appears that this contention is based upon the fact that the act of 1903 provides that section 1 of the original act shall be stricken out and certain matter enacted in lieu thereof, and that a similar provision is made in reference to section 10 of the original act, section 1 providing for the creation of a board of county commissioners and section 10 defining their duties. Even if section 1 of the act of 1900 were stricken therefrom and nothing substituted in its stead, it would seem that section 2 of that act would be sufficient to create a board of county commissioners for the County of Douglas; but, aside from this, a sufficient reply to the above contention, so far as it is based upon the alleged repeal of section 1 of the original act, is, that the section substituted therefor expressly provided that the commissioners in office when the amendatory act was passed should remain in office until the expiration of their terms, so that whatever powers were conferred upon the board of commissioners by the amendatory act were conferred upon the board as it was then constituted. Another complete reply is, that abrogation and substitution were simultaneous, the section creating the board of commissioners being simultaneously stricken and re-enacted. No conceivable interval of time elapsed between the repeal and the substitution; hence the board of commissioners never, for a single instant, ceased to exist. It has been often held that where one statute expressly declares that an existing statute is repealed, and, at the same time, re-enacts its provisions, or declares that a portion of another statute is repealed and re-enacts such portion thereof, the re-enactment neutralizes

the repeal, so far as the old law is continued in force.    The old law operates without interruption where the re-enactment takes effect at the same time as the repeal.    Suth. St. Const. § 134; Fullerton *v.* Spring, 3 Wis. 667; Laude *v.* Chicago Ry. Co., 33 Ib. 640; Glentz *v.* State, 38 Ib. 549; Scheftels *v.* Tabert, 46 Ib. 439; Middleton *v.* New Jersey R. Co., 26 N. J. Eq. 269; Merkle *v.* Bennington, 68 Mich. 133; Alexander *v.* Big Rapids, 70 Mich. 224; Moore *v.* Kenockee, 75 Mich. 332; Wright *v.* Oakley, 5 Met. (Mass.) 400, 406; United Hebrew Assn. *v.* Benshimol, 130 Mass. 325; Skryne *v.* Occidental Mill Co., 8 Nev. 219; Capron *v.* Strout, 11 Ib. 304; State ex rel. Birdsey *v.* Baldwin, 45 Conn. 135.    It is true that the new section substituted for the old changed the number of members of the board of commissioners from five to three; but as it declared that the change was not to "go into effect until after the expiration of the term of office of each of the present members of the board as now constituted," the same board of five members, composed of the same persons, continued to exist.

7.  Putting the contention of counsel for the plaintiff in error, in reference to the effect of the repeal of section 10 of the original act, in its strongest light, it is this, that inasmuch as that section alone defined the duties of the commissioners, when it was repealed the whole of the act of which it formed a part went with it.  What the effect upon the original act would have been if the amendatory act had left the commissioners with no public duties to perform we need not inquire, for it did not do so.  In this instance, as in the other, abolition and substitution were simultaneous, so that there was never a moment when the duties of the commissioners were not defined.    An act creating an office may be amended by completely changing the powers and duties appertaining thereto, without destroying the office, or removing therefrom the person who is filling it.

8.  The contention that the act of 1903 does not go into effect until January 1, 1905, is so obviously without merit as hardly to require discussion.    The contention is based upon the provision therein that the change made in section 1 of the original act "shall not go into effect until after the expiration of the term of office of each of the present members of the board as now constituted."    The change referred to was in the number of members

of which the board should consist, section 1 of the original act providing for a board of five members, and section 1 of the act as amended providing for a board of three members.     It was this change, and this change alone, which was not to go into effect until the time stipulated.

9. As the act of July 30, 1903, is not unconstitutional, it follows that the commissioners of Douglas county have lawful authority to call upon the tax-collector of that county for a settlement of his accounts with the county.     Section 10 of the act declares that the board of commissioners shall have exclusive jurisdiction and control "in supervising the tax-collector's and receiver's books, and allowing the insolvent lists for said county; in settling all claims against the county, examining and auditing all claims or accounts of officers having care, management, keeping, collecting, or disbursements of money belonging to the county or appropriated for its use and benefit, and bringing such officers to a settlement."

10. The contention that the act of 1903 is not retroactive is sound; but the contention that, because it is not retroactive, the county commissioners have no authority to call upon the tax-collector for a settlement of his accounts for the year 1902 is unsound.     It may be admitted that, before the passage of this act, the ordinary of the county alone had authority to bring the tax-collector to a settlement of his accounts for the year 1902; but it does not follow from this that the ordinary, after the passage of that act, had such authority.     His authority in the matter was taken away by the act and conferred upon the county commissioners.     It does not make the act retroactive to hold that it gives the county commissioners authority to bring the tax-collector to a settlement of accounts which came into existence before such authority was conferred upon them, and when it existed in the ordinary.  The power of the county commissioners to bring the collector to a settlement with the county depends, not upon whether the acts of the collector to be brought under review were performed before such power was conferred upon the commissioners, but upon the question whether or not the collector had lawfully settled the accounts involved with the ordinary, before jurisdiction of the matter was conferred upon the board of commissioners.  The tax-collector does not allege that, prior to the passage of

the act of 1903, he settled his accounts for the year 1902 with the ordinary, but he alleges that the ordinary alone now has authority to call upon him to do so, and avers his willingness to submit to such officer " his books, receipts, and other vouchers or papers pertaining to his office, for inspection, and to fully settle and account for every dollar and cent that may have come into his hands as tax-collector." , If, as his petition clearly indicates, he has not settled his accounts for the year 1902 with the proper county official, then the county commissioners have the authority to require him to come to such a settlement with them. The ordinary now has no such authority; for his jurisdiction in the matter terminated upon the passage of the act of 1903, which gave exclusive jurisdiction in all such matters to the board of county commissioners.

11. Undoubtedly the board of commissioners, when sitting as a court, has the power to punish for contempt. The act itself provides, "that said board of commissioners shall have the same power and authority to punish for contempt of their court as other courts of said county." Whether or not the board of commissioners has the power to punish the tax-collector for contempt, because of a failure on his part to comply with a notice to appear before the board with the books and papers appertaining to his office, it is not necessary to determine. It does not appear, either from the notice served upon him or from any allegation in his petition, that the commissioners contemplate punishing him for the alleged contempt otherwise than by a fine of $25. If they have such power, then of course he is not entitled to an injunction to prevent their exercising it. If they have no such power, then, if they do impose a fine upon him, he can refuse to pay it, and if an attempt is made to collect it by the issuance and levy of an execution upon his property, he can interpose an affidavit of illegality and prevent the collection of the fine. So in neither event would he be entitled to an injunction. For remedies which the law clearly provides for a case in which a tax-collector, or county treasurer, fails or refuses "to render an account of [his] official actings and doings respecting the county tax and funds," etc., " after being notified so to do by the proper officer or officers," see the Political Code, § 419. Whether these remedies are exclusive or not need not now be decided. It is very clear

that under the case presented by this record, the plaintiff was not entitled to the extraordinary relief for which he prayed.

*Judgment affirmed.   All the Justices concur, except Simmons, C. J., absent.*