## 74272. BARRETT v. THE STATE.
### (360 SE2d 400)

BIRDSONG, Chief Judge.

Patrick Michael Barrett appeals his conviction for trafficking in cocaine. The offense involved 428 grams of a mixture containing cocaine, of which 80 percent, or 342.4 grams, was proved to be pure cocaine. *Held*:

1. The language of the indictment reads in pertinent part as follows: "Patrick Michael Barret[t] and Joseph Michael Bassett, Jr. . . . did knowingly bring into this state and were knowingly in actual possession of more than 400 grams of a mixture containing cocaine. . . ." Appellant contends his prosecution is a nullity, according to *Robinson v. State*, 256 Ga. 564 (350 SE2d 464), which held that the repeal of OCGA § 16-13-31 without a "saving clause," after an indictment but prior to trial and conviction rendered the subsequent conviction invalid. Appellant raises the point evidently for the first time on appeal, by an "amendment" to his enumerations of error, which amendment he filed after both he and the State had briefed the appeal issues. If he is correct in his attack on the conviction, then by virtue of de facto abatement during prosecution it is a nullity, and is void. " 'A "void" judgment is in reality no judgment at all. It is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. . . . But whenever it is brought up . . . [the party] may assail its pretentions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or

collateral.' [Cit.]" *Jowers & Son v. Kirkpatrick Hardware Co.*, 21 Ga. App. 751 (2) (94 SE 1044). By statute, in Georgia, "[t]he judgment of a court having no jurisdiction of the person or subject matter, or void for any . . . cause, is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." OCGA § 17-9-4. *Mason v. Carter*, 223 Ga. 2 (2) (153 SE2d 162). See *Hagan v. Hagan*, 209 Ga. 313 (2) (72 SE2d 295). If the judgment is a nullity and void, the right to attack it is not lost by laches (*Mason*, supra); nor is it waived by the failure to attack it before, since it is void, and not voidable, in that the abatement absolutely extinguishes the prosecution, and by definition amounts to the "entire overthrow or destruction of the action." 1 AmJur2d, Abatement, Survival & Revival, § 1, p. 41 (2d ed.) Therefore, the appellant's attack upon this conviction, based upon abatement, is properly before this court, and must be heard.

(a) In *Robinson* at p. 565, the Supreme Court stated the rule: " 'At common law, the repeal of a criminal statute abated all prosecutions which had not reached final disposition in the highest court authorized to review them. [Cits.] Abatement by repeal included a statute's repeal and re-enactment with different penalties. [Cit.] And the rule applied even when the penalty was reduced. [Cit.] To avoid such results, legislatures frequently indicated an intention not to abate pending prosecutions by including in the repealing statute a specific clause stating that prosecutions of offenses under the repealed statute were not to be abated. [Cit.]' *Bradley v. United States*, 410 U. S. 605, 607-608 (93 SC 1151, 35 LE2d 528) (1973)."

What necessitated the ruling in *Robinson*, and distinguishes it from this case, is the fact that the conduct charged against that appellant — possession of "more than 28 grams of a mixture containing cocaine" — was no longer a crime after the repeal of the statute effective July 1, 1985, a date before the entry of final judgment in *Robinson*. See also *Blount v. State*, 181 Ga. App. 330 (352 SE2d 220).

In both *State v. Fordham*, 172 Ga. App. 853 (324 SE2d 796) and *Davis v. State*, 172 Ga. App. 893 (325 SE2d 926), cited by *Robinson*, the statute making the charged conduct a crime was not reenacted when it was repealed, but a period of time intervened between repeal and reenactment during which there was no such crime. Clearly in such a case, the repeal, i.e., the abolishment of the crime, terminates a prosecution as indicated in *Robinson*. To the same effect and similar circumstances, see *Chastain v. State*, 177 Ga. App. 236 (339 SE2d 298) also cited in *Robinson*.

Likewise, in *Gunn v. State*, 227 Ga. 786 (183 SE2d 389), cited by the court in *Robinson*, there was no valid law defining the crime at the time the appellant committed the acts. See *Gunn v. Balkcom*, 228 Ga. 802 (188 SE2d 500).

In *Robinson,* supra, and *Blount,* supra, the conduct could have involved an amount of cocaine, less than 28 grams under the 1985 law (Ga. L. 1985, p. 552) or less than 10 percent pure cocaine under the 1986 law (Ga. L. 1986, p. 397, § 1), which per se did not and does not constitute "trafficking" in this state since the 1985 repeal. The decisions and the rule stated in *Robinson* and *Blount* are absolutely correct, and were necessary to prevent conviction of the crime of trafficking for conduct that did not constitute the crime of trafficking in cocaine when those defendants were tried, but no such exigency prevails in this case, and we perceive the rule to be slightly different.

The conduct in this case — trafficking in 428 grams of a mixture containing cocaine, of which 80 percent, or 342.4 grams, was pure cocaine — has not ceased to be a crime in this state from the day it was committed up to the present date. It was an offense under the law as it stood at the time of the act (trafficking in 400 or more grams of a mixture containing cocaine or in 200 or more grams of cocaine; Ga. L. 1980, p. 432, effective July 1, 1980); the conduct was an offense at the time of trial and conviction (trafficking in 200 or more, i.e., 342.4, grams of cocaine; Ga. L. 1985, p. 552, effective July 1, 1985); and it is an offense as the law stands today (trafficking in 400 grams or more of a mixture with a purity of 10 percent or more cocaine; Ga. L. 1986, p. 397, § 1, effective July 1, 1986).

While it is true that, as said by the United States Supreme Court in *Bradley,* supra, and by our Supreme Court in *Robinson,* a saving clause will save a prosecution proceeding after repeal of a law which was in effect when the conduct was committed, a saving clause is not the only mechanism by which a prosecution might be validated in a particular case. In *Bradley,* what was sought was a lighter sentence than applied when the criminal conduct was committed; it was sufficient to that purpose, and did not pose any cost to public and legislative policy against crime, to merely invoke the general saving clause to punish the defendants under the previous law.

However, in the year before *Bradley,* the United States Supreme Court held: "The rule is well established that prosecutions under statutes impliedly or expressly repealed while the case is still pending on direct review must abate *in the absence of a demonstration of contrary congressional intent* or a general saving statute. For, '[p]rosecution for crimes is but an application or enforcement of the law, and if the prosecution continues the law must continue to vivify it.' [Cit.]" (Emphasis supplied.) *Pipefitters Local Union No. 562 v. United States,* 407 U. S. 385, 432 (92 SC 2247, 33 LE2d 11). It is this "continued vivification" of the law or statute which is necessary to continue or validate the prosecution. In *Pipefitters Local No. 562,* the Supreme Court first looked for a "demonstration of . . . congressional intent" that would prevent abatement and, not finding any, relied

upon the general federal saving clause.

In *Sekt v. Justice's Court of San Rafael*, 159 P2d 17, 21, the California Supreme Court said the rule which abates prosecutions following a repeal without a saving clause "is based on presumed legislative intent, it being presumed that the repeal was intended as an implied legislative pardon for past acts . . . [and] it being assumed that the Legislature, by repealing the law making the act a crime, did not desire anyone in the future whose conviction had not been reduced to final judgment to be punished under it. But this rule only applies in its full force where there is an outright repeal, and where there is no other new or old law under which the offender may be punished . . ." i.e., where, as in *Robinson*, the offense is abolished and the conduct is no longer a crime.

In *Sayer v. Brown*, 119 Ga. 539, 546-547 (46 SE 649) and *Webb v. Echols*, 211 Ga. 724, 727 (88 SE2d 625), it was held that where a statute expressly declares that an existing statute is repealed, and simultaneously reenacts the same (*Sayer*, supra) or substantially the same (*Webb*, supra) provisions, the reenactment neutralizes the repeal and acts as a continuation of the old law. Granted the 1985 and 1986 incarnations of OCGA § 16-13-31 are not the same form as existed prior to the 1985 act and when this conduct was committed in June 1985; but in substantial material effect, they have continued to declare the conduct in this case to be a crime. To paraphrase *Sayer*, never for a single instant has the conduct in this case ceased to be a crime.

Although the offense has been redefined, this conduct has consistently been included in those definitions as constituting the crime of trafficking. The conclusion is inescapable that the public policy of this state which forbids the sale, manufacture, delivery, bringing into the state or actual possession of the amount of cocaine shown in this case, has never abated but has strengthened.

While clearly after July 1, 1985, the legislature no longer regarded as trafficking in cocaine the possession of an undetermined and perhaps infinitesimal amount of cocaine in a mixture (see *Robinson*, supra), it is equally clear the legislature continued to regard, as trafficking in cocaine, the selling, manufacturing, delivering or bringing into this state and possession of 342.4 grams of pure cocaine, as happened in this case, and moreover *increased the penalty*. It cannot reasonably be supposed that with this object in view and with the strengthening censure of the legislative frame of mind, the legislature designed to extend pardon and forgiveness to those who violated the provision of the former act, and whose same conduct violated the act as it was reenacted in 1985 and as it stands today.

To keep the horse before the cart, there is nothing evil or offensive, constitutionally or otherwise, about prosecuting as a crime that conduct which was a crime when committed, so long as it has not

since become lawful *as was the case in Robinson, Blount, Gunn, State v. Fordham* and *Davis*. The legislature can specifically provide that such prosecution will not abate, as held in *Robinson* and *Bradley v. United States*; or the legislature can "revivify" the law by simultaneously with the repeal of the former law, reenacting law criminalizing the same behavior.

With the redefining of the crime and the reenactment of harsher penalties for the same conduct as was an offense under the law when the conduct was committed, we do not surmise any remotely conceivable legislative intent to pardon and forgive those who committed the offense before the new law came into effect, except, as in *Robinson*, where the conduct ceased in fact to be the crime of trafficking.

We therefore conclude there is a clear "demonstration of [legislative] intent," (*Pipefitters Local Union No. 562*) that prosecution of the conduct in this case under the former law should not abate with the re-defining of the crime and the reenactment of harsher criminal sanctions, inasmuch as it has not ceased to be a crime in this state and the penalty has increased. The appellant was found guilty of trafficking in an amount proven to be 428 grams of a mixture containing 80 percent purity of cocaine, or 342.4 grams pure cocaine. This is eight times the amount of pure cocaine that would qualify the appellant for prosecution under today's law. This conduct has not been decriminalized in this state at any time. The prosecution was not abated.

(b) The trial court did not err in sentencing the appellant Barrett to 25 years, 15 years in confinement and 10 years on probation, with a $250,000 fine. This is the penalty that attached to his conduct under the law by which he was prosecuted. " 'It is the settled law of this State that where a crime is committed on a certain date, the penalty which attached to the crime on that date is the penalty exacted by our law. . . . [T]he penalty for a criminal offense relates only to those offenses committed when and after such legislation becomes effective.' " *State v. Williams*, 172 Ga. App. 708, 709 (2) (324 SE2d 557); *Barton v. State*, 81 Ga. App. 810, 814 (60 SE2d 173).

2. Appellant appeals on the general grounds, i.e., contends the verdict is contrary to the evidence, without supporting evidence, and contrary to law; and that the admission of the cocaine into evidence was prejudicial error and irrelevant as to himself because the evidence is undisputed that he was not in "actual possession" of it as required by § 16-13-31.

The evidence showed that airplane tickets for appellant Patrick Michael Barrett and Joseph Bassett were both purchased with cash, twelve minutes apart from the same travel agency in Toledo, Ohio, on June 4, 1985. The tickets were for June 5 flights on the same plane from Toledo to a connecting flight in Atlanta, then to Miami. The

return flights were for June 6, same plane, from Miami to Atlanta, then to Toledo. The tickets were purchased in the names Patrick Brown and Joe Schmidt. On these planes, appellant (as Patrick Brown) and Bassett (as Joe Schmidt) sat in different rows. At trial, Bassett testified that appellant bought these tickets. According to Bassett, a friend had introduced him and appellant a few days earlier because appellant wanted to purchase some cocaine and Bassett knew how to set up a deal. It was arranged the two would fly to Miami where Bassett's sister lived; her boyfriend would obtain and sell the cocaine. Bassett was disturbed that appellant had bought the tickets in false names, but it was done before Bassett knew of it. On June 5, they flew to Atlanta, then to Miami; appellant took only a brown tote bag and Bassett took a red tote bag with a few clothes. Appellant had the cash for the cocaine purchase. On the night they arrived in Miami, Bassett made the initial negotiations with the seller at $18,000 for about a pound of cocaine; then Bassett left to get something to eat and never knew what the final price had been for the cocaine. The next day, appellant and Bassett returned to Atlanta. Bassett agreed to carry the cocaine in his red tote bag so he could take the risk; in return, he would receive some of the cocaine.

The pair came under suspicion in Atlanta and the arrests were made as follows: Clayton County investigator Simon, agent Richardson, and DEA agent Markonni were in the airport observing passengers arrive on flights from certain Florida cities known for drug distribution and importation. Their attention was drawn to Bassett because he had only a carry-on tote bag and after leaving the plane appeared to be waiting for someone, at times walking backwards and nearly colliding with other persons as he looked back. He appeared to be nervous. Because of his suspicious behavior; Simon and Richardson followed Bassett up the concourse and maintained surveillance. Finally, Bassett met another person (appellant) 16 gates beyond the arriving gate area; they had a brief conversation and then parted. Bassett then checked into the departing gate for the Toledo flight, giving the name Joe Schmidt. At this point the agents were able to obtain a reservation report on this named passenger and learned he had made a quick turn-around trip to Miami, which fact was another indicator of drug trafficking. Simon decided to interview him. Bassett had seated himself in the departing gate area and placed his red tote bag on the table beside his chair. Simon saw appellant (the person previously seen talking to Bassett on the concourse) walk up and place his brown tote bag on the table next to the red tote bag and then leave. When Simon interviewed Bassett, Bassett disavowed any ownership of the red tote bag; therefore, the bag was searched and Bassett's driver's license was discovered, and the cocaine. On his person, Bassett carried a copy of a flight itinerary for Pat Brown on the

same plane. During all this time at the airport, when Simon and Richardson followed Bassett, agent Markonni had stayed behind to watch whatever person Bassett was waiting for. Markonni did not see that person, but caught up with Simon and Richardson and watched the brown tote bag on the table after Simon, Richardson and Bassett had left to conduct the interview of Bassett and search the red bag. A few minutes later Markonni learned cocaine had been found in Bassett's red bag and also a flight invoice for Pat Brown. Markonni went back to watch the brown bag and found the name Patrick Barrett on it; he saw a person matching the description given him of the man Simon and Richardson had seen speaking to Bassett on the concourse. This person walked past the gate, evidently saw Markonni sitting in the gate area and went to the next gate, looking back at the bag. At this point Markonni decided to interview this person. Markonni asked to see the man's airplane ticket. The man said it was in his bag, walked over and retrieved the bag, and extracted his plane ticket. He said his name was Patrick Brown, but he said he had no identification, not a driver's license, credit card, nor even a receipt. Appellant agreed to a search of the brown tote bag because, he said, "I don't have any drugs." Markonni found in the bag a checkbook with the name Patrick Bassett. At this point, owing to the totality of all the circumstances — the false name; the reservation history; the quick-trip; the lack of luggage; appellant's suspicious behavior; his lack of identification; his having left his bag with Bassett; and the fact that Bassett, who was carrying cocaine, had also carried appellant's travel itinerary — Markonni arrested appellant with probable cause to believe he was involved with Bassett and the cocaine.

The state forensic chemist testified the cocaine amounted to 428 grams or slightly less than a pound, and tested 80 percent pure cocaine.

The evidence in this case is such that a reasonable trier of fact could rationally have found proof of guilt of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Boyd v. State*, 244 Ga. 130, 132 (259 SE2d 71); *Turner v. State*, 151 Ga. App. 169, 170 (259 SE2d 171). The testimony of the accomplice Bassett is well corroborated by the evidence. OCGA § 24-4-8; see *Birt v. State*, 236 Ga. 815, 826 (225 SE2d 248). The cocaine itself was not inadmissible as irrelevant and prejudicial; nor was it made so because appellant did not carry it in his own bag. The difference between actual possession and constructive possession is one of degree, the two often shading into one another so that it is difficult to say where one begins and the other begins. *Dalton v. State*, 249 Ga. 720 (292 SE2d 834). See *Lang v. State*, 171 Ga. App. 368 (320 SE2d 185). Whether he had physical possession of the cocaine, appellant aided and abetted its actual physical possession and

is guilty of the offense of trafficking under OCGA § 16-13-31 and under § 16-2-20, as a party to the crime. Moreover, the evidence in this case shows appellant had the power and intention to control, and in fact did control, Bassett's physical possession of the cocaine which appellant had purchased and then owned. Bassett physically carried the bag containing appellant's cocaine so as to "take the risk" and was being paid with part of the cocaine to do so, but appellant's control of it was actual. We decline to hold the legislature meant to exclude from the purview of § 16-13-31 a person in active participation in trafficking in cocaine merely because two people do not usually carry at one time the same small bag containing contraband drugs, nor would one person usually physically carry large amounts of contraband drugs. See *Evans v. State*, 167 Ga. App. 396 (306 SE2d 691). The "actual possession" required by OCGA § 16-13-31 to authorize a conviction for trafficking refers not merely to physical custody but refers to actual active participation in the possession of such substances so as to be a party to the crime of trafficking.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

## ON MOTION FOR REHEARING.

The appellant contends this case cannot be distinguished from *Robinson* because the indictment accused Barrett of bringing into this State and being in actual possession of more than 400 grams of "a mixture containing cocaine." However, this argument misses the whole point that while the prosecution in *Robinson* was abated, the one in this case was not. Therefore prosecution of this appellant, who was indicted under the law in effect at the time of the act, was proper. The appellant has got the cart before the horse. Prosecution of an offense under the law in effect at the time of the act is not, as a principle, unjust or offensive by itself. A repeal abates such a prosecution only because it is presumed the legislature "by repealing the law making the act a crime, did not desire anyone in the future whose conviction had not been reduced to final judgment to be punished under it," but intended to pardon and forgive them. *Sekt*, supra. This presumption assumes that the conduct is no longer a crime. *Robinson* clearly fell within the ambit of that assumption; this case does not. As we said, the conduct in this case has never been decriminalized. The simultaneous repeal and reenactment of laws making this conduct a crime, and increasing of penalty, forbid us to conclude, much less to presume, that the legislature meant by the repeal and reenactment to pardon and forgive the conduct as proven in this case. With the clear demonstration of legislative intent (*Pipefitters Local Union No. 562*) that this prosecution not abate, the prosecution was properly pursued under the law then existing and under the indictment tracking the

language of that law. See generally *Moran v. State*, 170 Ga. App. 837, 841-842 (318 SE2d 716).

If the State had not proved the amount of pure cocaine in the mixture, or if there had been a material dispute in the evidence as to how much cocaine was in this 428-gram mixture, so that it could not be determined whether the jury, in finding appellant guilty, found he possessed such quantity of cocaine as has continued to be trafficking in this State, then undoubtedly we might conclude this case falls within the ambit of conduct involving an undetermined and perhaps infinitesimal amount of cocaine, which the 1985 repeal abolished as "trafficking" in this State.

DECIDED JUNE 25, 1987 —
REHEARING DENIED JULY 16, 1987 —

*Lillian L. Neal*, for appellant.
*Robert E. Keller*, District Attorney, *Clifford A. Sticher*, Assistant District Attorney, for appellee.